[Civ. No. 31302. First Dist., Div. Two. Oct. 8, 1974.]

RAPHAEL S. KRAUSEN, Plaintiff and Appellant, v. SOLANO COUNTY JUNIOR COLLEGE DISTRICT, Defendant and Respondent.

## Counsel

Karlton, Blease & Vanderlaan and Coleman A. Blease for Plaintiff and Appellant.

Milton Goldinger, County Counsel, Billy B. Burton, Assistant County Counsel, and Harry B. Wyeth, Deputy County Counsel, for Defendant and Respondent.

## Opinion

**ROUSE, J.**—This is an appeal by a probationary teacher from a judgment denying his petition for a writ of mandamus compelling a junior college district to set aside its decision not to reemploy him for the school year 1970-1971.

The evidence, which is without conflict in most respects, may be summarized as follows: In August 1967, plaintiff Raphael Krausen was employed as a full-time probationary instructor by defendant Solano County Junior College District. Plaintiff remained in defendant's employ for three school years and was at all times assigned to teach in the apprentice training program conducted by defendant at the Mare Island Naval Shipyard pursuant to a contract between defendant and the Department of the Navy. The apprentice training program differed from the regular academic program at Solano College in several respects.

On February 17, 1970, defendant was notified by the Department of the Navy that enrollment in the apprentice training program would be reduced by 15 percent for the school year 1970-1971. Defendant had employed six instructors in the apprentice training program during the school year 1969-1970. Five of the instructors, including plaintiff, were full-time instructors and the sixth devoted half of his time to teaching and half to administrative duties. When defendant learned of the reduction in enrollment for the school year 1970-1971, it was decided that the number of

instructors would have to be reduced by one for that year. Since plaintiff possessed the least seniority of the teachers assigned to the apprentice training program, defendant decided not to reemploy him for the school year 1970-1971.

On February 20, 1970, Dr. Evans, the superintendent of defendant district, wrote plaintiff and advised him that due to the reduction in the apprentice training program enrollment, plaintiff's employment would be terminated on June 30, 1970.

On March 11, 1970, Dr. Evans sent plaintiff a second letter to the effect that he was recommending plaintiff's dismissal to the board of trustees. The letter advised plaintiff that he could make a written request for a hearing before the board by March 23, 1970.

On March 23, 1970, plaintiff did make a written request for a hearing. When Dr. Evans received said request, he telephoned plaintiff and arranged to meet with him. During the course of the meeting, plaintiff told Dr. Evans that he was aware of an opening for a physics instructor at the college and that he would like to apply for that position. Dr. Evans assured plaintiff that his application would be given careful consideration. Dr. Evans then suggested to plaintiff that he should not persist in demanding a hearing because such action "might have an adverse effect on a possible recommendation that [Evans] might make that [plaintiff] be employed as physics instructor." Dr. Evans also told plaintiff that his request for a hearing might have an adverse effect in the eyes of the board of trustees when it considered plaintiff's application for the physics opening. According to Dr. Evans, plaintiff then agreed that he would "forego the hearing."

Plaintiff's testimony conflicted with Dr. Evans on this point. Plaintiff testified that when Dr. Evans asked whether he would give up the hearing, "I was very cautious at that moment not to commit myself, if the hearing was . . . a sort of concern, and it was my only link to what I considered . . . receiving fair treatment and consideration, and I wasn't about to give this up."

Plaintiff's qualifications for the physics position were reviewed by defendant district. Plaintiff possessed a general secondary teaching credential which permitted him to teach all subjects at the college. However, his academic preparation in chemistry, physics and mathematics was obtained over 30 years ago. In addition, plaintiff possessed no master's degree, and defendant district had consistently maintained a policy of employing only teachers with master's degrees in the regular academic program at the college.

On April 27, 1970, plaintiff was advised in writing that his qualifications had been extensively reviewed and that he was deemed unqualified for the physics position.

On May 4, 1970, defendant's board of trustees voted to terminate plaintiff's employment at the end of the school year 1969-1970. Plaintiff was sent written notice of this action.

On May 18, 1970, plaintiff, through his attorney, asked the board to reconsider its decision. At meetings held on June 1 and June 15, 1970, the board gave the matter further consideration. Although plaintiff and his attorney were present at both meetings, the board discussed plaintiff's qualifications in closed executive sessions from which plaintiff and his attorney were excluded.

On June 15, 1970, the board reaffirmed its decision to terminate plaintiff's employment due to the reduction in the apprentice training program. The board also determined that plaintiff was not qualified for any position which was then available in the regular academic program at the college.

At the time the board made this decision, plaintiff had seniority over four probationary teachers employed at the college. Defendant also employed two new instructors for the school year 1970-1971.

The trial court made factual findings in accordance with the above summary of the evidence and specifically found that plaintiff had requested a hearing but had verbally withdrawn said request when Dr. Evans told him that he would be given consideration for the physics position.

The court concluded as a matter of law that plaintiff's teaching position in the apprentice training program was a "particular kind of service" which defendant district could and did discontinue because of a reduction in enrollment, as authorized by section 13447 of the Education Code; that defendant district had the right to establish standards for the selection of persons to be employed as teachers in the regular academic program at the college and was not required to employ an applicant merely because he possessed a general secondary credential; that defendant had proceeded in the manner required by law and that its decision not to reemploy plaintiff for the 1970-1971 school year was not an abuse of discretion or in excess of its jurisdiction.

Judgment was accordingly entered denying plaintiff a peremptory writ of mandamus.

■ Plaintiff's first contention on appeal is that he was entitled to a formal hearing under sections 13447 and 13443 of the Education Code.

The rights of the parties in the instant case are governed by the 1967 version of section 13447, which provided in pertinent part as follows: "Whenever in any school year the average daily attendance in all of the schools of a district for the first six months in which school is in session shall have declined below the corresponding period of either of the previous two school years, or whenever a particular kind of service is to be reduced or discontinued not later than the beginning of the following school year, and when in the opinion of the governing board of said district it shall have become necessary by reason of either of such conditions to decrease the number of permanent employees in said district, the said governing board may terminate the services of not more than a corresponding percentage of the certificated employees of said district, permanent as well as probationary, at the close of the school year; provided, that the services of no permanent employee may be terminated under the provisions of this section while any probationary employee, or any other employee with less seniority, is retained to render a service which said permanent employee is certificated and competent to render.

"Notice of such termination of services for reduction in attendance shall be given before the 15th day of May in the manner prescribed in Section 13443 of this code, and services of said employees shall be terminated in the inverse of the order in which they were employed, as determined by the board in accordance with the provisions of Sections 13262 and 13263 of this code.

"The board shall make assignments and reassignments in such a manner that employees shall be retained to render any service which their seniority and qualifications entitle them to render." (Stats. 1967, ch. 1040, pp. 2647-2648.)

Subdivision (a) of the 1969 version of section 13443 provided as follows: "No later than March 15 and before an employee is given notice by the governing board that his services will not be required for the ensuing year, the governing board and the employee shall be given written notice by the superintendent of the district or his designee . . . that it has been recommended that such notice be given to the employee, and stating the reasons therefor." (Stats. 1969, ch. 1315, pp. 2651-2652.)

Subdivision (b) of section 13443 provided that the employee was entitled to request a hearing before the governing board to determine if there was cause for not reemploying him for the ensuing year, and subdivision (c) of the statute required that the hearing be conducted in accordance with chapter 5 of the Administrative Procedure Act (commencing with § 11500 of the Gov. Code).

Plaintiff concedes that the 1967 version of section 13447 of the Education Code made the procedural safeguards of section 13443 of the Education Code available to an employee dismissed for a reduction in attendance but did not make such safeguards available to an employee whose dismissal was caused by a school board's decision to reduce or discontinue a particular kind of service. Thus, plaintiff admits that he was not entitled to a hearing if the trial court was correct in determining that defendant's decision not to reemploy him was the result of its determination to reduce a particular kind of service. However, plaintiff contends that this was not the case, since the underlying cause for his dismissal was a reduction in attendance in the apprentice training program.

We conclude that plaintiff's position is without merit. Section 13447, as above noted, describes a reduction in attendance as a situation where in a given school year the average daily attendance "in all of the schools of a district for the first six months in which school is in session *shall have declined* below the corresponding period of either of the previous two school years . . . ." (Italics supplied.) The statute expressly refers to a decline in attendance which *has taken place* during the first six months of a particular school year. Further, the decline must have occurred in all of the schools of a district. In the instant case, no actual decline in attendance had taken place at the time of defendant's decision not to reemploy plaintiff for the ensuing school year, and in addition, there was no evidence whatever of any decline in attendance at the college. Defendant had merely been notified by the Department of the Navy that enrollment in the apprentice training program *would be* reduced by 15 percent in the school year 1970-1971. Defendant then decided to reduce the number of instructors in the apprentice training program for that year. It is obvious that under these circumstances, the termination of plaintiff's employment was not the result of a reduction in attendance, within the meaning of section 13447, but was the result of defendant's having decided to reduce a particular kind of service, consisting of the apprentice training program. Hence, by his own admission, plaintiff was not entitled to a hearing under section 13447.[1]

---

[1]In *Karbach* v. *Board of Education* (1974) 39 Cal.App.3d 355 [114 Cal.Rptr. 84], recently decided by the Second Appellate District, the court held that probationary teachers whose employment was terminated under section 13447 of the Education Code were entitled to a hearing under section 13443 of the Education Code. However, that case is distinguishable from the instant case in two respects: first, the petitioners in the *Karbach* case were terminated for a reduction in attendance rather than for a reduction in a particular type of service. Secondly, the rights of the parties in the *Karbach* case were governed by the 1970 amendment to section 13447 of the Education Code, which made the procedural safeguards of section 13443 of the Education

■ Plaintiff next contends that even if the termination of his employment was the result of a reduction in a particular kind of service, he nevertheless had a right to a full hearing on the question of whether he was entitled to fill one of the teaching positions at the college which were held by instructors possessing less seniority than plaintiff. He bases this argument on the last paragraph of section 13447, which provides that the board "shall make assignments and reassignments in such a manner that employees shall be retained to render any service which their seniority and qualifications entitle them to render."

The provision upon which plaintiff relies is broadly worded and refers to "employees" and not, as do preceding provisions of section 13447, merely to "permanent employees." The language used in the final paragraph of the statute is not ambiguous. It contains a mandatory directive to the board to determine whether any employee whose employment is to be terminated for a reduction in attendance or for a reduction in a particular type of service possessed the seniority and qualifications which would entitle him to be assigned to another position. It seems clear that the provision in question does confer seniority rights and bumping privileges upon probationary, as well as permanent, employees. The provision has been interpreted to mean "that when a [particular] service is eliminated [or reduced] the holder of the position is not necessarily terminated, but is entitled to another assignment to which his seniority and qualifications entitle him." (*Otto* v. *Davie* (1973) 34 Cal.App.3d 570, 575 [110 Cal.Rptr. 114].)

In the light of the foregoing, it is clear that the board did have a duty to determine whether plaintiff was qualified to render any services which were being performed by probationary teachers with less seniority. It would seem equally clear that plaintiff was entitled to a hearing on this question.

In *Davis* v. *Gray* (1938) 29 Cal.App.2d 403 [84 P.2d 534], the court had occasion to interpret former section 5.711 of the School Code (the predecessor of § 13447 of the Ed. Code) insofar as it provided that no permanent employee could be dismissed under that section while a probationary employee was retained or employed to render a service which such permanent employee was certificated and competent to render. Although section 5.711 contained no provision expressly requiring a hearing, the appellate court held that it would be violative of due process to allow

---

Code available both to employees terminated for a reduction in attendance and to employees terminated for a reduction in a particular type of service. The instant case, as above noted, is governed by the 1967 version of section 13447 which, as plaintiff Krausen concedes, did not make the procedural safeguards of section 13443 available to employees terminated for a reduction in a particular type of service.

■

a permanent employee to be deprived of his position without a hearing to determine his qualifications for positions held by probationary employees. The court stated that "before the teacher may be declared to be incapable of performing the work of any of the probationary teachers, and therefore be discharged, reasonable notice and a hearing in which she may be afforded the opportunity to present evidence of her competency must first be given to her. Otherwise she would be deprived of a valuable vested right without due process of law." (P. 408.)

In the case at bar, the final paragraph of section 13447 of the Education Code gave plaintiff the right to be assigned to any position which he was qualified to fill and which was held by a probationary employee with less seniority. It follows that plaintiff was entitled to a hearing to determine whether he was qualified for any such position.

The question remaining is whether or not plaintiff was accorded the required hearing. Plaintiff takes the position that he was not because he was never given the oportunity to know the claims of the adverse party and to meet them by explaining or disputing opposing evidence. However, the record does not support this contention.

The minutes of the meetings held by the governing board of defendant junior college district on June 1 and June 15, 1970, show that plaintiff appeared with his attorney, Mr. Giambroni, at the June 1 meeting. Mr. Giambroni advised the board that plaintiff was contending that he had not waived his right to a hearing. Mr. Giambroni stated that he had no preference as to whether an open or closed meeting was held, and the board then voted to hold an executive session to consider the matter. An executive session was held, and upon its conclusion the board voted to defer action on the matter until the next regular meeting on June 15, 1970.

At the June 15 meeting, a 30-minute executive session was first held to discuss the matter of plaintiff's reemployment. The regular open meeting then resumed, and the assistant county counsel, Mr. Powers, stated that during the executive session evidence had been heard from Miss Buckley, the chairman of the science department, and Dr. Hosley, the assistant superintendent and vice president for instruction at the college. Mr. Powers stated that the board was prepared to reaffirm its previous findings that a reduction in the Mare Island apprentice training program was necessary and that the only questions remaining were plaintiff's qualifications and seniority for another position with the junor college district. Mr. Powers pointed out that plaintiff's qualifications in the fields of chemistry, physics and mathematics had been extensively reviewed during the executive session, but he further stated that the board was willing to hear any testimony

or argument which plaintiff wished to offer, either at a closed or open session.

The hearing continued in open session, and plaintiff's attorney informed the board that plaintiff's qualifications were available in his permanent record. Mr. Giambroni asserted that plaintiff had a major in chemistry and engineering, with minors in mathematics and physics, and was qualified to teach any of these subjects. Plaintiff then discussed his educational background with the board, and in the course of such discussion it developed that he did not have a master's degree or a major in mathematics. In response to questioning by the board, plaintiff admitted that his only recent training in chemistry and the physical sciences consisted of a summer session he had taken in 1966. Plaintiff also admitted that he had no background in astronomy, which was required for the physics teaching position at the college.

At the conclusion of this discussion, a board member stated that he believed sufficient information had been presented and thoroughly reviewed, and he moved that the board make certain findings relative to the non-reemployment of plaintiff. The board then unanimously adopted findings, reaffirming its decision to reduce the apprentice training program and also determining that plaintiff was not entitled on the basis of qualifications or seniority to be assigned to any other teaching position with the junior college district.

■ It is settled that the governing board of a school district may hold executive sessions to consider and even act upon personnel matters unless the employee affected has requested a public hearing. (Gov. Code, § 54956; *Lucas* v. *Board of Trustees* (1971) 18 Cal.App.3d 988 [96 Cal.Rptr. 431].)

■ In the instant case, plaintiff never objected to the executive sessions held by the board, and at the June 1 hearing, plaintiff's attorney in fact stated that he had no preference between an open or closed hearing. In any event, during the open session of the meeting held on June 15, plaintiff and his attorney were given every opportunity to present whatever evidence and argument they wished on the subject of plaintiff's reemployment rights based upon his qualifications and seniority. We conclude that plaintiff did receive a hearing which fulfilled due process requirements.

Plaintiff next argues that the trial court applied the wrong standard in weighing the evidence bearing upon the question of whether plaintiff had waived his right to a hearing. Plaintiff also asserts that any waiver of his right to a hearing was invalid under section 13338.1 of the Education Code and that defendant was estopped to raise the defense of waiver. Inasmuch as

we have determined that plaintiff was accorded the hearing to which he was entitled, these arguments need not be discussed.

■ Plaintiff asserts that section 13447 of the Education Code requires that at least one permanent employee must be deprived of his position before any probationary employee is accorded such treatment. Plaintiff bases this argument upon the language of section 13447 to the effect that "when in the opinion of the governing board . . . it shall have become necessary . . . to decrease the number of permanent employees . . . the said governing board may terminate the services of . . . employees . . . permanent as well as probationary . . . ."

Plaintiff's suggested construction of the statute would lead to an absurd result and would nullify the more specific provision of the statute to the effect that "the services of no permanent employee may be terminated under the provisions of this section while any probationary employee . . . is retained to render a service which said permanent employee is certificated and competent to render."

The general rule is that when statutory language is susceptible of two constructions, one which would produce absurd consequences and the other a reasonable and fair result, the latter construction should be adopted. (*Cryor* v. *State Personnel Bd.* (1967) 253 Cal.App.2d 100, 104 [61 Cal. Rptr. 243]; see also *City of Escondido* v. *Municipal Court* (1967) 253 Cal.App.2d 801, 805 [61 Cal.Rptr. 362].) Clearly, this rule is controlling in the instant case and requires a rejection of plaintiff's interpretation of section 13447.

■ Plaintiff next contends that defendant's decision to terminate his employment violated the language of section 13447 to the effect that the governing board of a school district "may terminate the services of not more than a corresponding percentage of the certificated employees of said district . . . ." Plaintiff asserts that the anticipated 15 percent reduction in the enrollment in the apprentice training program entitled defendant to reduce its teaching staff for the program by only a corresponding 15 percent. He argues that defendant's reduction of the staff from five and one-half instructors to four and one-half instructors constituted a reduction in excess of 17½ percent and was therefore in violation of section 13447. Plaintiff contends that the proper procedure would have been for defendant to reduce the number of hours taught by the five and one-half instructors.

Defendant, in reply to this argument, takes the position that the "corresponding percentage" provision can reasonably be applied only in situations where a termination of employment is based upon an actual reduction

in attendance. Defendant reasons that where the governing board of a school district determines to discontinue or reduce a particular kind of service, there would normally be no way of calculating a "corresponding percentage." Hence, it is simply within the discretion of the board to determine the amount by which it will reduce a particular service.

Defendant's reasoning appears sound. Section 13447 sets forth no specific standards to be followed by the governing board of a school district in determining the amount by which it will reduce a particular service. Thus, the question appears to be within the sound discretion of the board. In the instant case, the board had been informed by the Department of the Navy that enrollment for the 1970-1971 school year would be decreased by 15 percent. This information certainly furnished justification for a reduction in service, and it was within the board's discretion to determine the degree of reduction which it deemed necessary and proper under the circumstances. It was not unreasonable for the board to determine that the most appropriate reduction it could make was the elimination of one full-time teaching position.

The judgment denying plaintiff a peremptory writ of mandamus is affirmed.

Taylor, P. J., and Kane, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 5, 1974.