[Civ. No. 44169. First Dist., Div. Four. Jan. 31, 1979.]

ROYAL KING et al., Plaintiffs and Appellants, v.
BERKELEY UNIFIED SCHOOL DISTRICT et al.,
Defendants and Respondents.

**COUNSEL**

Van Bourg, Allen, Weinberg & Roger and Steward Weinberg for Plaintiffs and Appellants.

Littler, Mendelson, Fastiff & Tichy, Robert M. Lieber and Harlan E. Van Wye for Defendants and Respondents.

**OPINION**

RATTIGAN, Acting P. J.—The several appellants are former certificated employees of respondent Berkeley Unified School District. Their employment was terminated in 1976 because of the reduction or discontinuance of certain school programs. They subsequently commenced this proceeding in mandamus against respondent district and its governing board (hereinafter collectively identified as District), alleging that their statutory

rights to reemployment had been violated. They appeal from a judgment denying relief.

Appellants commenced the proceeding by filing a "Petition For Writ Of Mandate" on September 7, 1977. They alleged in it as follows: Prior to July 1, 1976, they had been "regular certificated employees" of the District. They had been "terminated" in 1976, pursuant to Education Code sections 13447 and 13443 but subject to the preferential reemployment rights granted them by section 13448.[1] The District had since violated these rights by employing or assigning other persons to four positions for which one or more of the appellants had the requisite seniority, and were "certificated and competent," as provided in section 13448. (See fn. 1, *ante.*)

In the prayer of the petition, appellants requested the issuance of a writ of mandate which would compel the District to offer one or more of them reemployment in each of the positions described. In support of the petition, they filed declarations by an officer of a teachers' organization; by appellants Lazar and King; and by Stewart Weinberg, appellants' attorney.

An alternative writ of mandate was issued on the strength of the petition and the declarations mentioned. The District filed an answer in which it pleaded material admissions and denials and an array of affirmative defenses. It also filed declarations by its director of certificat-

---

[1]Statutory references herein are to the Education Code except where indicated otherwise. Its sections were renumbered in the reorganized code which became operative on April 30, 1977. (Stats. 1976, ch. 1010, § 2, p. 2384; Stats. 1976, ch. 1011, p. 4581. See Historical Note, 26 West's Ann. Ed. Code, (Reorg. 1978) § 1, p. 4.) Appellants' petition cited the pertinent sections by their pre-1977 numbers, which were in effect when the various actions it challenges were taken by the District. We cite the former numbers for these reasons.

Section 13447 authorized a school district to "terminate the services" of permanent employees when required to do so by a decline in average daily attendance or the reduction or discontinuance of "a particular kind of service," subject to the procedural provisions of section 13443. (See present §§ 44955 and 87743.) It is undisputed that the District complied with these two sections when appellants were "terminated" in 1976.

Section 13448 provided in pertinent part: "13448. Any permanent employee whose services have been terminated as provided in Section 13447 shall have the· following rights: [¶] 1. For the period of 39 months from the date of such termination, any employee who in the meantime has not attained the age of 65 years shall have the *preferred right to reappointment,* in the order of original employment as determined by the [governing] board . . . *if the number of employees is increased or the discontinued service is reestablished,* with no requirements that were not imposed upon other employees who continued in service; provided, that no probationary or other employee *with less seniority* shall be employed to render a service which said·employee is *certificated and competent* to render. . . ." (Italics added.) (See present §§ 44956 and 87744.)

ed personnel (hereinafter Director) and its superintendent of school (Superintendent).

The cause was argued and submitted for decision on the pleadings and the various declarations identified above. The trial court successively denied the petition by minute order; signed and filed findings of fact and conclusions of law in the District's favor; and entered a judgment discharging the alternative writ and denying the petition. This appeal followed.

The trial court made separate findings of fact and conclusions of law concerning each of the four positions in dispute. It stated in its conclusions of law that the District's actions in filling all four positions had been "discretionary," and that relief in mandamus was to be denied because no "abuse of discretion" had been shown on the facts found in any instance.[2]

The evidence and the separate findings and conclusions relative to three of the positions are summarized, to the extent we deem pertinent, in the recitals which follow. The recitals also include certain facts which are undisputed in each case.

### The Mathematics Position

In September, 1976, the District employed Clarence Harris to fill a position teaching mathematics at the seventh and eighth grade levels. He was among the District's laid-off employees, as were appellants Opely, Taplin, and King. Each of these three held a credential for the position, each had some experience teaching mathematics, and each was senior to Harris. The Director stated in his declaration as follows:

[2]The court's first three conclusions of law were stated as follows:

"1. Former Education Code section 13448 required . . . Respondent [the District] to rehire those persons laid off, in order of seniority, for any available position for which they qualified.

"2. In determining a laid-off teacher's qualification for an available position, respondent must consider not only legal qualifications (the appropriate credentials) but actual or factual *competence* (the correlation between the applicant's specific training and experience and the duties of the available position). See *Krausen* v. *Solano County Junior College Dist.* (1974) 42 Cal.App.3d 394 [116 Cal.Rptr. 833].

"3. In determining matters of actual *competence,* school districts and their governing boards are invested with the power to make *discretionary* decisions for which they have a special competence. Courts of law should not, and cannot, overturn such decisions in the absence of a clear showing that such discretion *has been abused.*" (Italics added.)

As will appear, the court further concluded that the District had not abused its "discretion" with regard to each of the positions in question.

He had reviewed the personnel records of those persons on the "District Layoff List (of certificated employees)" for the purpose of identifying the most senior person on the list "who was both certificated and *competent*" (italics added) *to hold the position in question.* He had identified Harris as that person. From a previous review of the records of Opely, Taplin, and King, he had ascertained that Opely had only two college semester units and two postgraduate semester units in mathematics, and that Taplin and King each had only three or less postgraduate units in the subject. "Based on this limited academic background in mathematics," the Director did not "consider . . . [any of the three] . . . *competent* to render the services for which Mr. Harris was hired." (Italics added.)

In its finding No. 3, the trial court found that the Director had "reviewed the files of . . . [Opely, Taplin, and King] . . . , decided that they had limited academic backgrounds in mathematics, and were *not competent* to actually fill the position." (Italics added.) In conclusion of law No. 4, the court stated that "there has been no clear showing that respondent [the District] *abused its discretion* in deciding that academic background was an essential qualification and determining who did and did not have the needed background." (Italics added.)

*The Teaching-counselling Position*

In October 1976, the District assigned Trae Boxer (a current employee) to a new position at a Berkeley High School campus. The position involved 50 percent teaching duties and 50 percent counselling duties. Appellant Bern had a credential for counselling, but not for teaching. The Director recited these facts in his declaration and added:

"It was and is my position that she [Bern] could not be employed for a position which required a teaching credential for at least 50% of the duties that would be required . . . . Ms. Boxer, even though junior to Ms. Bern, had both credentials for the job when it became available . . . . What was done in this case was simply that an old position was reestablished and it was filled by the most senior person who was *certificated and competent* to perform the duties of that position." (Italics added.)

In finding No. 4, the trial court found that appellant Bern had not been "offered the position because she did not have the teaching credential to handle . . . 50% of the position's duties." In conclusion of law No. 5, the

court stated that "[t]he half counselling/half teaching position clearly shows *no abuse of discretion*. . . . [Appellant Bern] . . . does not have the required teaching credential. No cited authority compels respondent [the District] to offer two separate half-time positions in order to accommodate those previously laid off. Virtually no evidence was presented to show that respondent showed bad faith in so defining the available position." (Italics added.)

### The Physical Education Position

In April 1977, the District employed Stan Nakahara to a position as a remedial teacher of physical education at Berkeley High School. Appellants Combs and Jones held standard secondary teaching credentials with majors in physical education. Their names appeared on the aforementioned "District Layoff List." This automatically made them senior to Nakahara, because he had not previously been employed by the District.

The Director stated in his declaration that the duties of this position had been defined in a "Position Announcement" which the District had published before the job had been filled. He attached the announcement to his declaration as exhibit A, incorporated it by reference, and further stated that the District had published it without resort to the "Layoff List" because it "appeared" that no one on the list "met the minimum qualifications or experience" required. Referring specifically to appellants Combs and Jones in this context, he alleged that "both women are credentialed to teach physical education at the secondary school level," but that "neither has the additional qualifications and experience for this specialized job as shown on the attached Exhibit A."

In its finding No. 6, the trial court found that "it is clear that the two laid-off teachers [appellants Combs and Jones] did not have the experience and training required for the position as described in the Position Announcement. The position required specialized training and experience with the physically handicapped in *Remedial* Physical Education."[3] (Original italics.)

---

[3] The "Position Announcement" described the position in pertinent part as follows: "Title Of Position: Remedial Teacher Of Physical Education . . . . Primary Responsibilities: . . . [t]his person would be responsible for the instruction of physically handicapped pupils in remedial physical education. . . . Minimum Qualifications: B. A. degree in physical education and a secondary credential; must have completed or be able to complete within one year the National Trainers' Exam; two years of advanced course work in sports medicine at the postgraduate level and/or master's degree in the area of sports medicine. Experience Required: Four years of teaching experience in physical

In its conclusion of law No. 7, the court stated: "The remedial physical education position clearly requires a special, actual *competence*. . . . [Appellants Combs and King] . . . have the requisite legal credentials to fill this position. . . . [They] . . . have made no showing that they have the training and experience necessary to actually fill the position. Once again, respondent [the District] has not *abused its discretion* . . . ." (Italics added.)

Appellants' claim to relief in mandamus is by no means clearly stated as to these three positions, but it is apparently based upon the express language of the statute under which they are proceeding. They have invoked the so-called "ordinary mandamus" statute (Code Civ. Proc., § 1085), which provides that a writ of mandate will lie to compel a public agency to perform a duty the law "enjoins" *or* to admit a person to a "right or office" to which he is entitled and from which he has been "unlawfully precluded."[4] Appellants conceive that these provisions entitle them to a writ *as a matter of law* upon the theories that section 13448 both "enjoins" the District to reemploy them, and vests in them an enforceable "right" to be reemployed, in the positions they respectively seek.

This concept cannot prevail as a challenge of the sufficiency of the evidence to support the trial court's findings on the three positions described (findings 3, 4 and 6), because each is clearly supported by the evidence recited with it above. In each, however, the court variously referred—and deferred—to the pertinent administrative decision of the Director as the basis for concluding that relief in mandamus did not lie because no "abuse of discretion" by the District appeared in any instance.

■ The remedy of "ordinary mandamus" invoked here will lie to control an abuse of discretion, but not the manner of its exercise. (5

---

education; eighty hours of practical labor work in sports medicine at the graduate degree level; work with colleges and physicians in the area of sports medicine and rehabilitative therapy." No showing was made that appellants Combs or Jones held any of these qualifications.

[4] Code of Civil Procedure sections 1084 and 1085 successively provide:

"1084. The writ of mandamus may be denominated a writ of mandate.

"1085. It may be issued by any court, except a municipal or justice court, to any inferior tribunal, corporation, *board,* or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; *or* to compel the admission of a party to the use and enjoyment of a right or office to which he *is entitled, and from which he is unlawfully* precluded by such inferior tribunal, corporation, *board,* or person." (Italics added.)

Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, §§ 65 [pp. 3843-3844], 75 [pp. 3851-3852], 77 [pp. 3853-3854].) As to these three positions, the terminal questions are therefore whether the trial court was correct in concluding (1) that section 13448 permitted the District to exercise "discretion" in determining whether each of the various appellants was both "certificated and competent," within the meaning of the statute, to hold the position to which he claims reemployment rights under it (see fns. 1 and 2, *ante*); and (2) that no abuse of this discretion had been shown in any instance.

The application of section 13448 obviously requires that someone make informed determinations whether a laid-off employee reached by the statute is both "certificated and competent" to hold a position to which he claims reemployment rights. As the trial court indicated in conclusion of law No. 3, these determinations necessarily involve "discretionary decisions" by a school district's responsible officials because they "have a special competence" to make them. We perceive in section 13448 no legislative intent to negate or limit this "special competence" and its "discretionary" exercise. Both are essential to the implementation of the reemployment rights which the statute grants to laid-off employees.

The statute itself thus supports the conclusion that the District was acting within its "discretion" in evaluating whether the qualifications of the various appellants comported with the statutory standards. The same conclusion is supported by decisions dealing with the evaluation of applicants for certificated employment in related contexts. (See *Jones* v. *Oxnard School Dist.* (1969) 270 Cal.App.2d 587, 591-592 [75 Cal.Rptr. 836]; *Krausen* v. *Solano County Junior College Dist.* (1974) 42 Cal.App.3d 394, 397-399, 404 [116 Cal.Rptr. 833] [expressly cited by the trial court: see fn. 2, *ante*]. See also Note, *Teacher Dismissals Under Section 13447 of the California Education Code* (1976) 27 Hastings L.J. 1401, 1422.)

The District was therefore acting at its discretion in determining (1) that no appellant claiming the right to be reemployed in the mathematics or physical education positions was "competent" to hold it within the meaning of section 13448; and (2) that appellant Bern was not "certificated" to hold the "half counselling/half teaching position," within the same meaning, upon the basis that it required two credentials and she held only one. The findings made on each of these positions (Nos. 3, 4 and 6) support the trial court's conclusions (Nos. 4, 5 and 7) that the District's discretion had not been abused in any instance. Mandamus will accordingly not lie with regard to these positions (5 Witkin, Cal. Procedure,

*op. cit. supra,* Extraordinary Writs, § 75, pp. 3851-3852), and the judgment must be affirmed as to each.

### *The Minority Counselling Position*

We treat this position separately because it commands the same result, but for different reasons. We again summarize the undisputed facts, the evidence, and the findings and conclusions to the extent deemed pertinent.

The position involved counselling· minority students at Berkeley High School. The District employed Allen Young to fill it in April 1977. He was a certificated counsellor who had also been terminated by the District in 1976, and was 10th in seniority on its "Layoff List." Several of the appellants claim preferential reemployment rights in the position pursuant to section 13448, contending that they are properly certificated (as shown on the list or otherwise), competent to hold the position, and senior to Young. However, the Superintendent stated in his declaration that Young had voluntarily resigned the position effective June 24, 1977; that the District had not since filled it; and that, if it were to be filled in the future, the District would assign a currently employed counsellor to it instead of hiring a new one.

In its finding No. 5, the court found (in part) that "[e]ffective·24 June 1977, Mr. Young resigned his position as special counsellor and did not assume that position in the coming year. No one was hired to take his place." In conclusion of law No. 6, the court stated (again, in part): "Regardless of the hiring procedures, Mr. Young occupied the position for, at most, two months. ■ *The position no longer exists,* wherefore the court cannot compel it to be filled in any particular manner." (Italics added.)

The passage quoted from finding No. 5 is obviously supported by the Superintendent's declaration. The passages quoted from conclusion of law No. 6 are to be interpreted as expressing the conclusion that mandamus will not lie to compel performance of an act which the law does not "enjoin" and which the District has no present duty to perform. This conclusion is correct. (See Code Civ. Proc., § 1085 [quoted in fn. 4, *ante*]; 5 Witkin, Cal. Procedure, *op. cit. supra,* Extraordinary Writs, § 67, pp. 3845-3846.) There is no occasion to disturb the judgment with regard to this position.

We have observed that our summaries of the undisputed facts, the evidence, and the findings and conclusions have been limited to those matters we deem pertinent. We have thus not reached various other contentions raised or suggested by appellants to the general effect that the District has acted with spurious motives and has "defied the law" in several respects. We suffice to state that we have examined these contentions, that we find them wholly unsupported by the record, and that they need not be discussed further.

The judgment is affirmed.

Christian, J., and McGuire, J.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 12, 1979.

*Assigned by the Chairperson of the Judicial Council.