[S.F. No. 24493. Dec. 29, 1983.]

JANET MARTIN, Plaintiff and Appellant, v.
KENTFIELD SCHOOL DISTRICT, Defendant and Respondent.

**COUNSEL**

Peter Thomas Galiano for Plaintiff and Appellant.

Diane Ross, Raymond L. Hansen, Kirsten L. Zerger and Ramon E. Romero as Amici Curiae on behalf of Plaintiff and Appellant.

Richard V. Godino, Sandra Woliver, Celia Ruiz, Breon, Galgani, Godino & O'Donnell, Douglas J. Maloney, County Counsel, and Ruth W. Rosen, Deputy County Counsel, for Defendant and Respondent.

OPINION

BIRD, C. J.—Education Code section 44956 provides tenured teachers who have been laid off with a preferred right to reappointment based on seniority.[1] The sole question presented by this case is whether—in selecting between two such teachers—the Kentfield School District acted in accord with the requirements of section 44956. More specifically, may an employment qualification not required of teachers who continued in service properly be used as grounds for not rehiring the more senior of two laid-off teachers?

I.

Appellant, Janet Martin, taught school in the Kentfield School District (District) from 1973 to 1979. During that time she was assigned to teach a broad range of subjects, including physical science, to elementary school classes in grades two through five. She attained tenured status in 1976. (See § 44882.) Due to decline in average daily attendance, the District terminated Martin's employment in June of 1979. (See § 44955.)[2] Pursuant to the mandate of section 44956, Martin's name was then placed on the District's reemployment list for preferential rehiring.[3]

Late in the spring of 1979, a position opened up for a physical science teacher in the "middle school" (seventh and eighth grades). School officials determined that no continuing employees were available to fill the position. At that time, the District did not advertise the science opening to teachers on the reemployment list. The position was left open and the District decided to offer a third year of literature instead.

In September of 1979, a few days after the new academic year had begun, the literature instructor resigned. In place of the literature course, the District decided to reestablish the third year of middle school science. Having received no applications from continuing employees for the open science

---

[1]All statutory references will be to the Education Code unless otherwise stated.

[2]Section 44955 provides for termination of teachers upon a decline in attendance or discontinuance of services by the district. This section requires, inter alia, that terminations be made in order of seniority, the least senior employees being laid off first.

[3]Section 44956 reads in pertinent part as follows:

"Any permanent employee whose services have been terminated as provided in Section 44955 shall have the following rights:

"1. For the period of 39 months from the date of such termination, any employee who in the meantime has not attained the age of 65 years shall have the preferred right to reappointment, *in the order of original employment* as determined by the board . . . if the number of employees is increased or the discontinued service is reestablished, *with no requirements that were not imposed upon other employees who continued in service*; provided, that no probationary or other employee with less seniority shall be employed to render a service which said employee is certificated and *competent* to render." (Italics added.)

position, the superintendent sent a letter to teachers on the reemployment list announcing the availability of the job and inviting applications. The letter set forth several "criteria" for the job. These were: "appropriate credential," "academic preparation," "experience in teaching Physical Science," "recent experience teaching Physical Science," "recent experience teaching Middle School students" and "experience with Middle School programs and students." The only applicants were appellant Martin and Mike Eisan.

On September 12, 1979, the District's school board met to determine whether Martin or Eisan should be awarded the job. Since Martin was the more senior applicant, the board examined her qualifications first. The board found that she possessed the appropriate teaching credential for the job. However, it also found that she "did not have sufficient academic preparation in physical science to support the physical science program as required in the Kentfield School District, Middle School" and that she did "not have any experience teaching Middle School programs and students." On the basis of these findings, the board concluded that Martin was "not competent" to occupy the position offered. Having been found to meet all the announced criteria, Eisan, with less seniority than Martin, was chosen to fill the position.

■ ■ ■ ■ Martin sought relief from the District's decision by petitioning for a writ of mandamus in the Marin County Superior Court.[4] Relying on section 44956, she contended that the District had abused its discretion in failing to hire her. That section provides that no employment requirements are to be imposed on teachers entitled to preferential reemployment that were "not imposed upon other employees who continued in service in the district." Martin asserted middle school experience was not required of continuing teachers and should not have been required of her. Since the District based its determination that she was not competent to fill the middle school position solely on this requirement, Martin argued, an order should issue directing the District to hire her.

The District argued that section 44956 permits it to exercise discretion in choosing between employees entitled to preferential rehiring. The District contends that, under section 44956, it is entitled to utilize criteria such as recent experience in evaluating competency. Only the most senior, *competent* applicant could be selected for an opening. The District thus asserts that, in requiring middle school experience, it was merely exercising its

---

[4]"The remedy of 'ordinary mandamus' invoked here will lie to control an abuse of discretion . . ." by a school district. (*King* v. *Berkeley Unified School Dist.* (1979) 89 Cal.App.3d 1016, 1022 [152 Cal.Rptr. 782].)

statutory authority to establish standards for determining applicants' competence.

Although the court found that the District "had not [previously] imposed the requirement of prior middle school experience upon continuing employees as a qualification to teach at the middle school," the judge refused to order the District to rehire Martin. The court concluded that it was within the District's discretion to determine the criteria for the teaching position and that the District had not abused its discretion in choosing Eisan over Martin.

This appeal followed.

## II.

The sole issue presented is whether the District abused its discretion by applying employment requirements to Martin which are not authorized by section 44956.

The principles which guide this court's determination are not in dispute. There exists, among employers in this country, a broad spectrum of policies with respect to the weight to be given seniority in the making of personnel decisions. The Legislature has clearly stated which tenured teachers on layoff status should be appointed to vacant positions. Section 44956 provides in pertinent part that any such employee "shall have the preferred right to reappointment, in the order of original employment as determined by the board . . . with no requirements that were not imposed upon other employees who continued in service; provided, that no . . . employee with less seniority shall be employed to render a service which said employee is certificated and competent to render."

In section 44956, the Legislature has made seniority the *sole* determinant as to which tenured teachers on layoff status should be appointed to a vacant position. The only limitation is that the teacher selected be "certificated and competent" to render the service required by the vacant position. Among employees who meet this threshold limitation, there is no room in the statutory scheme for *comparative* evaluation. Thus, as the District concedes, which of the two employees under consideration, Martin or Eisan, was "better" qualified for the job is not the question here, nor was it properly the question before the board. The question for the board's determination was simply whether Martin, the senior tenured teacher on layoff status, was "certificated and competent" to render the required service.

Such determinations, it has been held, involve "discretionary decisions" which are within the "special competence" of the school districts.

(*King* v. *Berkeley Unified School Dist.*, *supra*, 89 Cal.App.3d 1016, 1023.) As Martin concedes, it was within the power of the board to establish requirements for the vacant position. Such requirements could properly take into account both prior academic preparation in physical science and prior experience teaching middle school programs and students.

However, the District's discretion is subject to an important limitation. Under section 44956, it may not impose "requirements that were not imposed upon other employees who continued in service." Martin contends that the board's reliance upon her lack of prior middle school teaching experience violated that statutory prohibition.

The first disputed question is Martin's contention that prior middle school teaching experience constituted a "requirement" for the job within the meaning of section 44956.

■ The District asserts that the "criteria" set forth in its letter announcing the middle school position were not employment "requirements" within the meaning of section 44956. Rather, according to the District, the "criteria" were merely used as factors in evaluating the competence of applicants for the position. As such, the District claims, these "criteria" do not fall within the mandate of section 44956 that employment "requirements" be applied equally to continuing employees and persons on the reemployment list. If the court were to accept this semantic sophistry, the absurd conclusion would result that there were no "requirements" at all for the District's open position since the criteria announced in the letter were the only standards set forth by the District to determine eligibility for the position. Whether the standards promulgated by the District here are referred to as "criteria" or "requirements" is of no consequence. The fact is that the published standards governed employability for the announced position and, as such, they function as the "requirements" referred to in section 44956.

Indeed, the argument that the "criteria" set forth in the District's job announcement were merely to be used in assessing competence of the applicants and not as "requirements" for the job simply misses the point of the statute. Section 44956 clearly allows use of standards (whether denominated "criteria" or "requirements") to assess the competence of job applicants. However, the statute's underlying purpose of protecting teachers' seniority rights can only be accomplished by requiring such standards to be applied equally to both groups from which job applicants are drawn. The term "requirement" must, therefore, be construed to encompass all factors which are accorded any weight at all in the District's decision-making process.

Were the court to accept the District's distinction between employment "requirements," which are regulated by section 44956, and competence "criteria," which are not, the door would be opened to widespread abuse of the rehiring process. Such a construction of the statute would allow districts to use unequally applied, artfully drawn "criteria" to selectively employ or reemploy favored teachers. ■ ■■■ This would effectively circumvent the policy of protecting the employment rights of laid-off teachers which underlies section 44956.[5] This court will not interpret section 44956 in a manner which would have the effect of subverting the very purpose for which it was enacted by the Legislature.

The District is clearly correct in reasoning that it has the discretion to choose the most senior *competent* persons from the reemployment list to fill open teaching positions. Its discretion, however, is limited by the requirement set forth in section 44956 that, in judging competence, a district may utilize only criteria also imposed upon continuing teachers.

With this limitation in mind, the question remains whether the District abused its discretion in choosing Eisan over Martin for the physical science position. The answer turns on a factual inquiry: whether the requirement of prior middle school experience was applied evenhandedly to continuing and laid-off employees, or whether it was applied in a discriminatory manner. Unfortunately, the record as to that inquiry is unclear, and the findings incomplete. In particular, the record is incomplete as to the manner in which applicants were recruited for the open teaching job.

■ The record reveals that a physical science position "opened up" in the spring of 1979, that school officials determined that no continuing employees were available for the job, and that the position was not filled at that time. The record also indicates that in September of 1979, the school administration invited laid-off teachers to apply for an open physical science position. A letter was sent which listed "prior middle school experience" as one of the hiring criteria to be applied.

The record does not reveal, however, whether the position offered to laid-off employees in September was the same position offered to continuing employees the previous spring. In other words, it is unclear whether the September job announcement was part of a continuing recruitment process which began with the offer of the same job to continuing employees the

---

[5]"[T]he legislative intent . . . [of section 44956 is] . . . to give a permanent teacher, validly laid off, if she applied within 39 months and the emergency causing the layoff had expired, . . . the same employment rights that she would have had if no layoff had intervened . . . ." (*Waldron* v. *Sulphur Springs Union School Dist.* (1979) 96 Cal.App.3d 503, 505 [158 Cal.Rptr. 132].)

prior spring. If it was, and if, as the record suggests, prior middle school experience was required only of the September group, then it appears that the District applied different criteria to continuing and laid-off employees in violation of section 44956.[6]

Since the resolution of this factual question is essential to a determination of whether the District complied with section 44956, the judgment is reversed and the cause is remanded to the trial court for a resolution of this factual issue.

If the trial court determines that the District failed to comply with section 44956, it must then determine, either on the record before it or by remanding the cause to the District, whether Martin is "competent" under application of the proper criteria.[7]

Broussard, J., Reynoso, J., and Grodin, J., concurred.

**RICHARDSON, J.,** Concurring and Dissenting.—I concur with the majority's conclusion that the Kentfield School District's (District) compliance with section 44956 of the Education Code must be measured by whether or not its criteria of competence were applied evenhandedly to laid-off teachers with preferential reemployment rights and to continuing teachers. (All further statutory references are to that code.)

In view of the fact that no continuing teacher applied for the physical science teaching position *after* it was advertised to laid-off teachers with the criteria at issue in September 1979, appellant's assertion of discriminatory treatment depends upon her claim that this position was the same one left unfilled the previous spring. If it *was* the same position, her argument that different criteria were applied to continuing and laid-off teachers would have some validity. (Even in such a case, however, discrimination would not necessarily have been established; for it is at least arguable that the District properly could have decided to upgrade the requirements for all new appli-

---

[6]That no continuing employee actually applied when the position was made available to that group in the spring of 1979 does not alter this analysis. The proper inquiry is what criteria were in place to be applied at any given time to any application which may have been received.

[7]From the board's findings, it appears that the board relied upon *both* Martin's lack of academic preparation in the physical sciences *and* her lack of prior middle school teaching experience as grounds for finding her not "competent" for the job. If the board's consideration of the second factor is found by the trial court to have violated section 44956, that factor may not be considered in determining Martin's competence. Since it is impossible from the record before this court to ascertain whether or not the District would have found Martin "not competent" absent application of the second factor, such a determination must be made on remand.

cants—continuing and laid-off—when it made a new effort to fill the position in September.) On the other hand, if it was *not* the same position offered previously, then no claim of discriminatory application of the criteria would be tenable, because it is undisputed that only laid-off teachers sought the teaching position announced in September 1979.

I respectfully dissent, however, from the majority's remand for further factual determination because it is unnecessary in view of the record before us. Contrary to appellant's suggestion, the District has not sought unlimited discretion in the development and application of employment criteria.

The development of criteria for teacher competence is clearly within the District's statutory authority. There was no finding here that the criteria which the District applied to appellant's qualifications would not have been applied to any continuing employees who might have sought the new teaching position and there is no basis in the record for any such finding.

In a day when a national educational commission reports that "the educational foundations of our society are . . . being eroded by a rising tide of mediocrity that threatens our very future as a nation and a people" ("*A Nation At Risk,*" *a Rep. by the National Com. on Excellence in Education,* N. Y. Times (Apr. 26, 1983) p. 13, cols. 1-4), the District's earnest and good faith pursuit of excellence in those who teach its children should be acknowledged and encouraged rather than frustrated.

Appellant was a permanent employee of the District, teaching grades two through five in one of its elementary schools. At the end of the 1978-1979 school year, the employment of appellant and several other permanent teachers was terminated as a result of declining student enrollment and a reduction in particular programs, pursuant to section 44955. Appellant does not challenge the propriety of that termination.

*In September 1979,* the District established a third-year physical science course for grades seven and eight in its middle school. *Unable to find a competent person among its existing staff to teach the new course,* the District published an announcement of the teaching vacancy, listing several criteria of qualifications, and sent copies of the announcement to those teachers, including appellant, who were entitled to preferential reemployment rights pursuant to section 44956. Appellant was the most senior teacher on the list.

The criteria established by the District for employment in the new position were: (a) appropriate credential; (b) academic preparation; (c) experience in teaching physical science; (d) experience with middle school programs

and students; (e) recent experience teaching physical science; and (f) recent experience teaching middle school students. The announcement for the teaching position requested that any applicant submit to the District superintendent a resume of credentials, experiences and academic course work for each of the criteria.

Appellant and one Eisan were the only applicants. Eisan supplied the requested information; appellant did not. Nonetheless, the District's superintendent interviewed both Eisan and appellant, reviewed their qualifications and recommended to the District's board of trustees that Eisan be hired.

On September 12, 1979, the board met for the purpose of selecting a teacher for the new position. Both appellant and Eisan appeared. Because the superintendent's recommendation appeared to be "passing over" a more senior former employee, appellant was offered, and she accepted, the opportunity for an immediate hearing on her qualifications. The board described this hearing as one "to determine competency of [appellant] for the position . . . ."

The evidence developed at the hearing established that appellant had a standard elementary school teaching credential. Her academic preparation included a bachelor of science degree, with a major in conservation of natural resources. She maintained a B average in undergraduate and graduate studies and received a master's degree in science education, which required about 57 and ⅓ graduate units. She was first employed by the District on October 1, 1973, teaching grades two through five in its elementary school until she was terminated in 1979. She had never taught physical science as a separate subject, although science was included as part of her elementary school teaching program.

After the hearing the board deliberated and made specific factual findings that appellant had the appropriate teaching credential for the middle school level, but did not have sufficient academic preparation in physical science to support that school's physical science program, criterion (b). Nor did she have any experience teaching middle school programs and students, criterion (d). (By necessary implication, those findings also confirmed that appellant could not have had *recent* experience teaching middle school students, criterion (f). In addition, although the board did not make a specific finding on the matter, it appears to be undisputed that appellant had neither *recent* nor *any* experience teaching physical science as a separate subject, criteria (c) and (e).) The board expressly concluded that appellant "is not competent to teach the Middle School physical science curriculum as required by" the District.

Having concluded its hearing on appellant's competency, the board then reconvened its normal meeting. In support of his recommendation to hire Eisan, the superintendent earlier had testified that Eisan had the appropriate teaching credential, the degree of bachelor of science with a major in sciences, a B average in all of his undergraduate and graduate studies, and 66 graduate units after his bachelor of science degree. Eisan had taught eighth grade science in the District in 1968-1969, seventh and eighth grade mathematics and science at another school district from 1968 to 1974, and seventh and eighth grade science in the District's middle school from 1974 to 1979. He had, accordingly, both experience and "recent experience" teaching physical science and teaching middle school students. (It was only because he was *last* rehired by the District on September 1, 1974, however, that Eisan had 11 months less "seniority" than appellant in the District.) Having disqualified appellant because she was not competent to teach the new course, the District then hired Eisan, finding him to be the most senior applicant who was both properly certificated and competent to teach middle school physical science.

In denying appellant's petition for a writ of mandate, the trial court found that the board had full discretion to establish the criteria of competency hereinabove set forth, and that it faithfully abided by those criteria in finding appellant "incompetent." Concluding that the board did not abuse its discretion, the trial court refused to interfere with the board's decision. In my view, that judgment was sound.

Mandamus will lie to correct an abuse of discretion, but not the manner of exercise of discretion. (*King* v. *Berkeley Unified School Dist.* (1979) 89 Cal.App.3d 1016, 1022-1023 [152 Cal.Rptr. 782]; 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 65, pp. 3843-3844, § 75, pp. 3851-3852, § 77, pp. 3853-3854.) Further, it is established that in this appeal from the decision of the trial court which found no abuse of discretion by the District in declining to hire appellant, we must uphold that determination as to the basis of the administrative action if supported by substantial evidence. (*Adcock* v. *Board of Education* (1973) 10 Cal.3d 60, 66 [109 Cal.Rptr. 676, 513 P.2d 900].)

The applicable selection guidelines are clear. In pertinent part, section 44956 provides: "For the period of 39 months from the date of . . . termination [of an employee like appellant, any such employee] . . . shall have the preferred right to reappointment, in the order of original employment . . . if the number of employees is increased . . . , with no requirements that were not imposed upon other employees who continued in service; provided, that no . . . other employee with less seniority shall be employed

to render a service which said employee is *certificated and competent* to render." (Italics added.)

In essence, the majority concludes that the District may have violated this section when it found appellant incompetent to teach middle school physical science insofar as that finding was based upon appellant's lack of recent or other experience with middle school programs and students—factors which had not been "imposed upon other employees who continued in service" (§ 44956) when a teaching position in the science department had opened up the previous spring. I wholly disagree.

Initially, I suggest that the majority errs in failing to distinguish between criteria which may be relevant to a prospective teacher's competence to teach a specific course and the minimal requirements for employment as a teacher generally. There is a cognizable difference between the two. If there was not, the Legislature's express mandate for reemployment of the most senior "certificated *and* competent" teacher would be meaningless. (See § 44956, italics added.) Further, common sense suggests that while a teacher whose training is limited to the arts, for example, and one whose experience lies in the sciences may both be "certificated" and, therefore, generally qualified to teach school at a given academic level, neither may be "competent" to teach courses in the other's discipline. In my view, the statute takes note of this obvious fact of academic life in authorizing school districts to assess the "competence" as well as to determine the "certification" of prospective rehirees.

Further, as I read the District's "criteria" to which the majority objects, neither "experience" nor "recent experience with middle school students and programs" was an absolute prerequisite to reemployment. Rather, each was *a* factor to be considered with others in the board's formulation of its overall judgment of competence to teach the new science course. An examination of the criteria themselves supports this interpretation. If, for example, the criterion of "*recent* experience teaching Middle School students" (italics added) was an absolute prerequisite or "requirement" for appointment to the new position, then any additional "requirement" of mere "experience with Middle School programs and students" would be wholly superfluous or redundant. Similarly, a "requirement" that the applicant have "*recent* experience teaching physical science" (italics added) would make meaningless any additional "requirement" that such applicant merely have "experience in teaching physical science." In fact, however, each of the criteria established by the District can be seen as intended to provide independently relevant information of qualifications to assist the District in assessing an applicant's overall competency within the meaning of the statute. Indeed, the District here made clear that, notwithstanding appellant's

qualifications in other areas, its finding of appellant's incompetence to teach middle school physical science was based upon a consideration of *several* factors, including both insufficient academic preparation in physical science *and* lack of recent or any experience with middle school programs and students. Furthermore, the record reveals appellant's inability to satisfy the additional criteria of *recent* and, indeed, *any* previous experience in teaching a physical science course.

Even accepting, arguendo, the majority's characterization of the District's "criteria" of competence as "requirements" within the meaning of section 44956, the assumption that such "requirements" were—or would be—discriminatorily applied has no basis in the trial court's findings here. The court below did *not* find that the District would have applied to teachers who had "continued in service" criteria which were different from those applied to petitioner and Eisan in determining their competence to teach the new physical science course, assuming any such continuing teachers had chosen to apply for the new position. (In fact, of course, none did.)

Appellant's claim that the District was engaged in a "continuing recruitment process" from late spring of 1979 to September 1979 to fill a "vacant science position" has no basis in the record. Therefore, her conclusion that imposition of the "criteria" at issue here in September 1979 represents discrimination because the *same position* was offered to continuing employees in the spring without such criteria is without foundation.

It is obvious that here, as in most cases, conflicting testimony was offered on the issues. It is not our task, however, to reweigh the evidence in order to determine the facts of the case for the purposes of our review. Rather, it is the *trial court's findings,* insofar as they are supported by substantial evidence, which determine the facts, whether we like them or not.

Here the trial court quite simply *did not find* that the position denied to petitioner was the "same position" which was vacated by a science teacher in the spring of 1979. What the trial court *found* was "*On or about September 4, 1979,* respondent [District] determined to reinstate the physical science component of its three year science program in its Middle School." (Italics added.) The court found further that "On September 5, 1979, respondent announced the position opening of the 7th and 8th grade Physical Science Teacher with the [criteria which are at issue in this case]." The court also found that the criteria of prior middle school experience had not been imposed upon "continuing employees as a qualification to teach at the middle school *previously*" or "*in the past.*" (Italics added.) Finally, it found "That respondent district in imposing the requirement of experience teaching physical science at the middle school *did not depart* from the cri-

teria enunciated in its position vacancy announcement of September 5, 1979." (Italics added.)

No one contends that any of these findings were not supported by substantial evidence. Indeed, the letter of September 5, 1979, announcing the opening to teachers like petitioner and Eisan who were entitled to preferential rehiring rights, *itself* provides substantial evidence of the crucial finding that the physical science course was newly reinstated on September 4, 1979. That letter stated, in relevant part: "*Last night the Board* of Trustees [of District] accepted the resignation [of another teacher] and *decided to reestablish the third year of Science* instead of a third year of Literature." (Italics added.)

It would seem absolutely clear that the trial court's finding that a decision was made "on or about September 4, 1979," to reinstate a physical science course means that the course was not in place or in existence *prior* to that date. Equally obviously, a course reinstated in September 1979, could not have been offered to continuing employees earlier, in the spring of 1979, under different criteria. Indeed, there is neither finding nor evidence to establish the nature of the science teaching position which was vacated in the spring of 1979 and "left open" in the late spring of that year because— as the trial court *did* find—the District "was unable to find a qualified (competent) person" to fill it from its "regular staff." Without such finding or evidence, assertions that it was the "same course" are baseless. Whatever that earlier course entailed, however, it is clear that the District did not institute in the spring of 1979 a "continuing recruitment process" which culminated in the hiring of Eisan in September of 1979. As the majority acknowledges, attempts to fill the earlier vacancy simply were abandoned: "The position was left open and the District decided to offer a third year of literature *instead.*" (*Ante,* p. 297, italics added.) Only in *September 1979* was the decision made to offer the 7th and 8th grade physical science course.

In short, to interpret the trial court's findings as being ambiguous on the question of whether the District imposed different requirements on continuing and laid-off employees *in this case* obviously distorts the meaning of the findings. No continuing employee applied for the position which was reinstated in September 1979. Further, how any trier of fact could conclude from the undisputed evidence that the District *would not have* applied the same criteria to any continuing teacher who *might have* sought the position is a mystery. Thus, remanding this case to the trial court to afford it an opportunity to make just such a finding is unwarranted.

It is important to note that section 44956 cannot be read to bar the imposition upon laid-off and continuing teachers *alike* of any requirements

which had not *previously* been imposed upon continuing employees. Even appellant acknowledges that "It is not required that the district be frozen to a past practice. In the Kentfield District, and with respect to any other district, changed circumstances might indicate the need to revise employment or selection practices. But all that a district need do is to apply no greater requirements on reemployment list employees than are applied to continuing or other employees." The demand of section 44956 is for even-handedness and nothing more.

Equally important, the prohibition of discrimination against laid-off employees (by imposing requirements upon their reemployment which are not imposed upon continuing teachers) is not the sole command of the statute. There is also the express statutory condition upon preferential rehiring, namely, that a former employee must be "competent to render" the service sought by the district. (§ 44956.) That condition clearly implies that a school district has both the duty and authority to establish standards for determining the competency of an applicant for a specific position within the meaning of the statute.

In construing the identically worded predecessor to section 44956 (see former § 13448), the Court of Appeal has quite properly noted that the application of the section "obviously requires that someone make informed determinations whether a laid-off employee reached by the statute is both 'certificated and competent' to hold a position to which he claims reemployment rights . . . . [T]hese determinations necessarily involve 'discretionary decisions' by a school district's responsible officials because they 'have a special competence' to make them. We perceive in [this section] no legislative intent to negate or limit this 'special competence' and its 'discretionary' exercise. Both are essential to the implementation of the reemployment rights which the statute grants to laid-off employees." (*King, supra,* 89 Cal.App.3d at p. 1023; see *Moreland Teachers Assn.* v. *Kurze construing in similar fashion the identical standard in § 44955 for determining the order of termination of employees after a decision has been made to reduce their number]; Krausen* v. *Solano County Junior College Dist.* (1974) 42 Cal.App.3d 394, 402-403 [116 Cal.Rptr. 833] [construing the predecessor of § 44955 (former § 13447) similarly].)

The facts in *King, supra,* 89 Cal.App.3d 1016, were strikingly similar to those here. In that case, a laid-off teacher was reemployed to teach seventh and eighth grade mathematics. Three other laid-off employees—each *credentialed* to teach the position, each with *some* experience teaching mathematics, and each *senior* to the successful applicant—also had applied for the job. Because the academic background of each of the three was limited, however, the school district, exercising its permissible discretion, conclud-

ed that they were not competent to occupy the position within the meaning of the statute. (Former § 13448, the predecessor to § 44956.)

In my view, *King* pointed the direction we should follow here. In approving the hiring of a teacher with less seniority and the nonhiring of more senior laid-off teachers who had *some* training and experience in the (mathematics) specialty involved in the position to be filled, *King* clearly concluded that the school district had discretion to determine whether the respective qualifications of the applicants demonstrated "competence" to occupy the vacant position. Further, by its affirmance of the trial court's denial of mandate sought by the three unsuccessful senior applicants to secure their reemployment, the *King* court held that the school district acted well within its discretion in its evaluation. (89 Cal.App.3d at p. 1023.)

A comparable exercise of discretion was undertaken here by the District in determining competence. If, as in *King*, insufficient *academic preparation* is an adequate basis for concluding that an applicant for a newly created position is incompetent to teach it, there is no reason why insufficient relevant *teaching experience* may not *also* be considered in determining a job applicant's competence. In any event, here the District expressly considered both factors, insufficient academic preparation and teaching experience, and these exercises of judgment were well within the local district's power. And, as indicated, appellant failed to meet other criteria as well.

In a similar context, the United States Supreme Court recently sounded the proper note: "[C]ourts lack the 'specialized knowledge and experience' necessary to resolve 'persistent and difficult questions of educational policy.' *San Antonio Independent School Dist.* v. *Rodriguez*, 411 U.S., [1] 42 [(1973)]." (*Hendrick Hudson Dist. Bd. of Ed.* v. *Rowley* (1982) 458 U.S. 176, 208 [73 L.Ed.2d 690, 713, 102 S.Ct. 3034].) Thus, in rejecting a challenge to the manner in which one state chose to fulfill the requirements of a federal statute in order to qualify for federal funding of a state educational program for handicapped children, the court declared: "[O]nce a court determines that the requirements of the Act have been met, questions of methodology are for resolution by the States." (*Ibid.*)

We previously have affirmed the broad discretion and responsibility of school officials to administer schools in California. In *Adcock, supra,* 10 Cal.3d 60, 67, for example, we observed that ordinarily a school superintendent's exercise of discretion to transfer teachers between schools when it was in the best interests of the school district would not be reviewed or interfered with by the trial court in the absence of claimed violation of the teachers' constitutional rights. (See *Thompson* v. *Modesto City High School Dist.* (1977) 19 Cal.3d 620, 623 [139 Cal.Rptr. 603, 566 P.2d 237].) This

principle has equal application here. In the absence of some constitutional infringement, we should not interfere with the local District's creation and application of its own criteria for determining teacher competence under the circumstances herein presented.

It is apparent from the trial court's *findings* here that what the District did was to propose its new criteria for employment on September 5, 1979, the day after it decided to "reinstate the physical science component of its three year science program" by offering a 7th and 8th grade physical science course, and that such change in criteria *was* "applied equally *from the date of the change* to all potential applicants . . . ." (*Ibid.,* italics added.)

Finding no abuse of that discretion conferred upon the District by section 44956, pursuant to its duty to decide whether former employees seeking reemployment are "competent to render" the service required by the District, I would affirm the trial court's judgment denying mandate.

Mosk, J., and Kaus, J., concurred.