[No. F006693. Fifth Dist. Nov. 23, 1987.]

RICHARD DUAX et al., Plaintiffs and Appellants, v.
KERN COMMUNITY COLLEGE DISTRICT, Defendant and
Respondent.

COUNSEL

Chain, Younger, Lemucchi, Noriega, Cohn, Stiles & Rodriguez and James E. Noriega for Plaintiffs and Appellants.

Frank J. Fekete, Peter C. Carton, Joanne A. Velman, Stephen L. Hartsell, Dwaine L. Chambers and Roger R. Grass for Defendant and Respondent.

**OPINION**

**HAMLIN, Acting P. J.**—Richard Duax, Martha Kieke-Eastridge, and J. Wesley Sanderson (jointly appellants) appeal from a judgment of the Kern County Superior Court denying their Code of Civil Procedure section 1094.5 petition for writ of mandate directing respondent Kern Community College District to reclassify appellants and reinstate their prior teaching positions.

Appellant Sanderson contends he was improperly laid off due to the discontinuance of services he was providing based on the determination of the governing board of respondent that he was not competent to perform services being performed by a junior employee.

Appellants Duax and Kieke-Eastridge urge that they were credentialed to perform services being performed by junior staff members. Duax further asserts that he has "inverse bumping" rights.

We find appellants' contentions unmeritorious and affirm the judgment.

### FACTS AND PROCEDURAL HISTORY

Pursuant to authority granted to it under section 87743 of the Education Code,[1] respondent notified appellants Sanderson and Kieke-Eastridge that their instructional services would no longer be needed and appellant Duax that he was being reduced from his full-time assignment following the 1980-1981 school year. Section 87743 provides for layoff of teaching staff members due to a decline in student enrollment or a reduction in a particular kind of service. Appellants were served with timely notice of their layoffs; each requested a hearing on the charges as provided for by statute. (§ 87740.)

A hearing was held before Administrative Law Judge (ALJ) Willis Mevis on April 7, 1981. At that time, John P. Hernandez, respondent's assistant chancellor for personnel, testified regarding the reduction in teaching staff. He stated that prior to March 15, 1981, the board of trustees adopted a resolution specifying certificated services that would be reduced or discontinued for the 1981-1982 school year. He further testified that on January 8, 1981, respondent's board of trustees had adopted by resolution a standard of competency. That resolution provided that an employee must have rendered a service or taught in a specific subject area the equivalent of one year since 1971 (i.e., one year in the ten years preceding the adoption of the

---

[1] All further statutory references are to the Education Code unless otherwise indicated.

resolution) to be considered competent to render a service for purposes of "bumping" a junior employee. Hernandez indicated that the service being rendered by appellant Sanderson was being discontinued, and because of Sanderson's lack of full-time teaching experience, he was not competent to provide instruction to students in the field of psychology; therefore, junior personnel with full-time teaching experience were being retained while Sanderson was not. Additionally, Hernandez testified that the courses being taught by appellant Kieke-Eastridge were being discontinued. She held a teaching credential only in the personal services area and was therefore not properly credentialed to teach in other areas in which classes would continue to be offered. Finally, appellant Duax was being reduced from his full-time assignment; he was scheduled to teach a maximum of 40 percent in the areas of basic education and English. Hernandez also indicated that appellant Duax did not hold the proper state credential to allow him to instruct in other areas.

The ALJ issued his proposed decision on April 16, 1981. On May 7, 1981, respondent's board of trustees met to discuss the ALJ's proposed decision; the board modified the decision based upon the record of the administrative hearing and adopted its own decision reducing Duax's assignment to 40 percent of a full-time position and laying off Kieke-Eastridge and Sanderson.

On July 14, 1981, appellants filed a petition for writ of mandate in the Kern County Superior Court, urging the court to issue an alternative writ commanding respondent to reclassify appellants and reinstate their prior teaching positions. The matter was heard on November 10, 1981, and apparently misplaced. About four years later, the trial court denied appellants' petition.

DISCUSSION

I.

*Standard of Review*

The nature of the hearing in the trial court and the standard that court used in reviewing the administrative decision determines this court's standard of review on appeal. The petition in the trial court was brought under Code of Civil Procedure section 1094.5, which provides in relevant part: "(a) Where the writ is issued for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior

tribunal, corporation, board, or officer, the case shall be heard by the court sitting without a jury. . . .

"(b) The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.

"(c) Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence. In all other cases, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record.

" . . . . . . . . . . . . . . . . . . .

"(e) Where the court finds that there is relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing before respondent, . . . or in cases in which the court is authorized by law to exercise its independent judgment on the evidence, the court may admit the evidence at the hearing on the writ without remanding the case.

" . . . . . . . . . . . . . . . . . . . ."

■ Whenever the administrative decision substantially affects fundamental vested rights, the trial court must use the independent judgment standard of review. (*Harlow* v. *Carleson* (1976) 16 Cal.3d 731, 734 [129 Cal.Rptr. 298, 548 P.2d 698]; *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34, 44-45 [112 Cal.Rptr. 805, 520 P.2d 29].) In this case, we are concerned with employees' teaching positions, which involve both "fundamental" and "vested" rights. As our Supreme Court stated in *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 144 [93 Cal.Rptr. 234, 481 P.2d 242], "In determining whether the right is fundamental the courts do not alone weigh the economic aspect of it, but the effect of it in human terms and the importance of it to the individual in the life situation." Clearly, a termination or a layoff impacts upon an individual's emotional well-being, his family life and his economic status. (Cf. *Turner* v. *Board of Trustees* (1976) 16 Cal.3d 818, 824 [129 Cal.Rptr. 443, 548 P.2d 1115]; and *Campbell Elementary Teachers Assn., Inc.* v. *Abbott* (1978)

76 Cal.App.3d 796, 802-803 [143 Cal.Rptr. 281].) In reviewing such rights, the trial court sits to conduct a de novo review and must independently judge the sufficiency of the evidence. While the minute order does not specifically indicate the thought process of the trial court, a thorough hearing was conducted on November 10, 1981, at which time three witnesses testified. In addition, at the hearing on the petition, counsel for respondent indicated without objection or correction, "This is a case in which the Court exercising its independent judgment reviewed the transcript prepared in the administrative proceeding." This leads us to conclude that the trial court independently weighed the evidence in making its decision.

■ Review on appeal is not as probing. We do not sit to conduct a de novo review; although we are confronted with the identical record examined by the superior court, we are limited to a search for substantial evidence. "As to issues upon which the trial court has properly exercised its independent judgment, the appellate court reviews the findings of the trial court to determine whether they are supported by substantial evidence on the whole record." (*Schmitt* v. *City of Rialto* (1985) 164 Cal.App.3d 494, 501 [210 Cal.Rptr. 788]; see also *Vernon Fire Fighters Assn.* v. *City of Vernon* (1986) 178 Cal.App.3d 710, 718 [223 Cal.Rptr. 871], and *Perez* v. *Commission on Professional Competence* (1983) 149 Cal.App.3d 1167, 1176 [197 Cal.Rptr. 390].) ■ The trial court's judgment must be upheld on appeal if supported by substantial evidence. All conflicts are resolved in favor of the prevailing party, who is entitled to the benefit of every reasonable inference to support the judgment. (*San Dieguito Union High School Dist.* v. *Commission on Professional Competence* (1982) 135 Cal.App.3d 278, 283 [185 Cal.Rptr. 203].) We will characterize evidence as substantial if it is of "ponderable legal significance . . . reasonable in nature, credible, and of solid value." (*Estate of Teed* (1952) 112 Cal.App.2d 638, 644 [247 P.2d 54]; see also *Ofsevit* v. *Trustees of Cal. State University & Colleges* (1978) 21 Cal.3d 763, 773, fn. 9 [148 Cal.Rptr. 1, 582 P.2d 88].) Alternatively, substantial evidence requires "relevant evidence that a reasonable mind might accept as adequate to support a conclusion, . . ." (*Gubser* v. *Department of Employment* (1969) 271 Cal.App.2d 240, 245 [76 Cal.Rptr. 577].)

With these legal tenets established and our standard of review set forth, we turn to the merits.

## II.

### *Authority to Lay Off*

■ Pursuant to section 87743, which governs certain staff reductions in community colleges, a community college district such as respondent is

authorized to reduce teaching staff through a procedure commonly known as layoff. These reductions may be based upon reduction in services and/or decrease in the average daily attendance of the student population.[2] In pertinent part section 87743 provides, as it did at relevant times herein:

". . . . . . . . . . . . . . . . . . . . . .

"Whenever in any school year the average daily attendance in all of the schools of a district for the first six months in which school is in session shall have declined below the corresponding period of either of the previous two school years, or whenever a particular kind of service is to be reduced or discontinued not later than the beginning of the following school year, and when in the opinion of the governing board of said district it shall have become necessary by reason of either of such conditions to decrease the number of regular employees in said district, the said governing board may terminate the services of not more than a corresponding percentage of the certificated employees of said district, regular as well as contract, at the close of the school year; provided, that the services of no regular employee may be terminated under the provisions of this section while any contract employee, or any other employee with less seniority, is retained to render a service which said regular employee is certificated and competent to render.

". . . . . . . . . . . . . . . . . . . . . .

"The board shall make assignments and reassignments in such a manner that employees shall be retained to render any service which their seniority and qualifications entitle them to render."

As is easily surmisable from a brief reading of the section, a district is statutorily authorized to reduce teaching staff and is required to proceed according to seniority principles. "The statute specifically protects tenure rights and seniority. Layoffs must begin with the most recently hired. Furthermore, tenured employees who are competent and properly credentialed must be reassigned to replace junior employees. Thus, section 87743 gives 'bumping privileges' to qualified, senior employees, even if their specific post has been eliminated." (*Vassallo* v. *Lowrey* (1986) 178 Cal.App.3d 1210, 1214 [224 Cal.Rptr. 357].) These bumping privileges allow a senior teacher whose teaching services are being terminated to move into the teaching

---

[2] The analog of section 87743 is section 44955, which contains similar provisions and governs the reduction of teaching staff in elementary schools providing education for grades K through 12. Prior to the reorganization of the Education Code effective in 1977, section 13447, the predecessor to section 87743 and 44955, governed layoffs in both K through 12 and community colleges. Thus cases construing section 13447 are relevant to layoffs in both K-12 and community colleges.

position of a junior teacher whose services the senior teacher is certificated and competent to perform, thus necessitating the layoff of the junior teacher and protecting seniority rights. Yet these bumping rights are not absolute even for a teacher with substantial seniority who is facing layoff. The section specifically requires the senior, regular employee to be "certificated and competent" to render the service otherwise being rendered by a junior member of the teaching staff.

A. *Wesley Sanderson*

Dr. Hernandez testified that clinical psychological services were being discontinued for the 1981-1982 school year and that appellant Sanderson provided those services at Bakersfield College. He further testified that Sanderson had been employed by respondent for approximately 25 years, that his current assignment was as a clinical psychologist, and that no clinical psychological services would be offered anywhere in respondent's district the next year. Dr. Hernandez also testified that psychology as a subject would be taught in the district in the ensuing school year. However, because of the standard of competency adopted by the board and the fact that Sanderson had not taught at Bakersfield College since 1960, he was not considered competent to perform those teaching services.

██ Sanderson characterized the issue regarding his continued employment as follows, "Should Appellant, WESLEY SANDERSON, have been retained in that there were several employees with less seniority performing services which Appellant was certificated and competent to render?" Since section 87743 is quite specific in providing that no regular employee may be laid off while any junior employee is retained to render a service which the regular employee is certificated and competent to render, we believe the real issue is whether or not Sanderson was competent to render services for which junior employees were being retained.

Thus, the meaning of "certificated and competent" becomes a watershed inquiry. In January of 1981, respondent's board of trustees passed a resolution defining the meaning of competence in order to implement a reduction in personnel under section 87743. That resolution stated: "In determining that no employee shall be terminated while a less senior employee is retained to render a service which the more senior employee is both certificated and competent to render, this Board directs the Chancellor to apply as a standard of competence that an employee have had experience rendering a service or teaching in a specific subject are[a] equal to a total of one year's full-time assignment in that service or subject area since January of 1971." In light of the board's definition of competency, the briefs of both

Sanderson and respondent properly narrow to the crucial inquiry: Was the standard of competence adopted by the board reasonable and valid?

■ In *Martin* v. *Kentfield School Dist.* (1983) 35 Cal.3d 294 [197 Cal.Rptr. 570, 673 P.2d 240] our Supreme Court, interpreting section 44956, the analog to section 87744, considered the "certificated and competent" standard embodied in that section.[3] As the court wrote, "[s]uch determinations, it has been held, involve 'discretionary decisions' which are within the 'special competence' of the school districts." (*Id.* at p. 299.) Similarly, in *King* v. *Berkeley Unified School Dist.* (1979) 89 Cal.App.3d 1016 [152 Cal.Rptr. 782], the court, in interpreting former section 13448, the section from which both sections 87744 and 44956 were derived, stated: "The application of section 13448 obviously requires that someone make informed determinations whether a laid-off employee reached by the statute is both 'certificated and competent' to hold a position to which he claims reemployment rights. . . . [T]hese determinations necessarily involve 'discretionary decisions' by a school district's responsible officials because they 'have a special competence' to make them. We perceive in section 13448 no legislative intent to negate or limit this 'special competence' and its 'discretionary' exercise." (*Id.* at p. 1023.)

While these decisions stress the discretion reposed in a school board in defining the term "competent," the court in *Forker* v. *Board of Trustees* (1984) 160 Cal.App.3d 13 [206 Cal.Rptr. 303] added further assistance in stating, "[a]s interpreted by the *Martin* court, the term 'competent' as used in section 44956 relates to specific skills or qualifications required of the applicant. Decisions prior to *Martin* have interpreted that term in a similar manner." (*Id.* at p. 19. See also *Moreland Teachers Assn.* v. *Kurze* (1980) 109 Cal.App.3d 648, 654-655 [167 Cal.Rptr. 343]; Ozsogomonyan, *Teacher Layoffs in California: An Update* (1979) 30 Hastings L.J. 1727, 1749-1751.) Hence, from these authorities we conclude that a board's definition of competency is reasonable when it considers the skills and qualifications of the teacher threatened with layoff.

■ Sanderson cites in his brief *Davis* v. *Gray* (1938) 29 Cal.App.2d 403 [84 P.2d 534] for the proposition that it is incumbent upon the school district, when laying off permanent personnel, to carry the burden to show

---

[3] Sections 87744 and 44956 generally concern the reemployment rights of teachers who have been laid off and contain the following: "For the period of 39 months from the date of such termination, any employee . . . shall have the preferred right to reappointment, in the order of original employment . . . provided, that no . . . other employee with less seniority shall be employed to render a service which said employee is certificated and competent to render." Thus cases that interpret "certificated and competent" as used in those sections provide guidance to us for section 87743 as well.

that the person about to be laid off is not competent to perform the services of an individual with less seniority.

There, the district was required to retain Ms. Davis, the petitioner, but under a very different fact pattern. Davis was certificated as a high school teacher in "all branches and grades." (*Id.* at p. 409.) Thus she was certificated to teach all subjects which were taught in any high school in the state. She had several years' service with the district when she was discharged after discontinuance of the particular service she was performing, as provided by section 5.711 of the School Code. That section, as amended in 1935, read as follows: "Whenever it becomes necessary to decrease the number of permanent employees in the school district on account of the discontinuance of a particular kind of service in such district, the governing board may dismiss so many of such employees as may be necessary at the close of the school year. In making such dismissals, employees shall be dismissed in the inverse of the order in which they were employed.

"Provided, however, that no permanent employee may be dismissed under the provisions of this section while a probationary employee is retained or employed to render a service which such permanent employee is certificated and competent to render." The last paragraph of section 5.711 of the School Code from 1935 is substantially similar to the paragraph currently contained in section 87743. In *Davis,* the petitioner was laid off after the board discontinued the service she was performing without the board determining that she was not competent to perform the services that were being provided by those junior to her in terms of seniority. The court indicated it seemed evident that the board was not aware of the 1935 amendment to School Code section 5.711, since the board did not attempt to determine such competency. Absent such a determination, the appellate court affirmed the judgment of the superior court directing the reinstatement of the petitioner as a permanent teacher.

Interestingly, while the board in *Davis* v. *Gray, supra,* 29 Cal.App.2d 403, had not made any determination of the petitioner's competency, the district had attempted to introduce evidence at the court hearing on the petition for writ of mandate to show that the petitioner was incompetent to perform the duties assigned to teachers with less seniority. The court stated that it was the province and the duty of the board, not that of the trial court, to determine whether the petitioner was capable of performing the duties of the continuing teachers with less seniority before her layoff was authorized.

Thus the statute envisions and the cases mandate that in the event of a layoff under section 87743 based on discontinuance of the services being provided by a senior member of the staff, the governing board must deter-

mine whether the senior employee is competent to perform services being performed by a junior employee. In this case, the governing board established a standard of competency that required one year's full-time teaching in the subject area within the last ten years, a standard clearly relating to skills and qualifications to teach. Dr. Hernandez testified at the administrative hearing that since teaching is the primary and premier function of the community college and since the job description for instructors in the board policy manual emphasizes teaching skills, development of course material, interaction with students, knowledge of student abilities, and evaluation of student work, he recommended to the board this standard of competency. Although Sanderson accurately points out that there are other factors that might have been taken into consideration and other competency standards that might have been imposed by the board, there is no mandate that the board do so. The mandate is that the governing board establish a standard of competency that relates to the skills and qualifications of the teacher. That standard was established by resolution of the governing board, and since it requires only one year of teaching in the last ten, not one in the last two or three, we are not persuaded that it too narrowly defines competency. Nor are we persuaded by Sanderson's argument that the district should consider several factors in making that determination. While we might agree it would have been better to have done so, Sanderson has cited no statute or case that imposes any such requirement on the board.

## B. *Richard Duax*

■ Appellant Duax raises two issues on appeal: (1) Should he have been assigned to a full-time position when he filed a credential allowing him to teach full time approximately six months after the layoff hearing? and (2) Should Mr. Garrett, a teacher senior to Duax, have been reassigned to allow Duax to teach two French courses, and thus reduce him to approximately 70 percent as opposed to 40 percent of a full-time position?

Duax testified that he was eligible in 1979 to receive a full-time credential in the area of basic education and that he had made known to respondent in February of 1981 that he had applied for that credential. Duax received the credential in question on October 26, 1981, and on the next day he filed it with the county superintendent of schools. Duax contends he should have been assigned to a full-time position in the area of basic education rather than being reduced to 40 percent of a full-time position since he was eligible to receive a full-time credential in that area. Notwithstanding his eligibility to receive a full-time credential in 1979, Duax apparently took no steps to apply for the credential until February 1981. The effect of a teacher's failure to obtain, hold and file a proper credential in a timely manner is governed by the decision in *Campbell Elementary Teachers Assn., Inc.* v. *Abbott,*

*supra,* 76 Cal.App.3d 796. In that case a teacher contended she was in fact properly credentialed but that the credential had not been properly recorded. The teacher did ensure the credential's proper recordation one day after she learned she had been laid off by her governing board.

The court held, "The governing board is not to be held responsible for the fact that Crow [the teacher] recorded her credential after all notices had been sent, a hearing held, and a decision rendered." (*Id.* at p. 815.) Further, the recent case of *Vassallo* v. *Lowrey, supra,* 178 Cal.App.3d 1210 indicates a credential recorded after March 15 cannot be used by a teacher to assert bumping or reassignment rights. The practical reason behind this rule is that layoff notices must be given, if at all, by March 15 of any school year to effect a reduction in teaching staff for the ensuing school year. Should a teacher be allowed to present a certificate to the governing board after March 15 and thereby obligate the board to continue to employ that teacher, the board would by that date be precluded from serving a layoff notice to a junior teacher. This would result in the board being forced to retain an extra teacher on staff when the entire purpose of the layoff procedure is to allow the reduction of staff positions because there are fewer students to instruct or fewer services being offered.

Duax's credential was not properly filed with the county superintendent of schools until about six months after the layoff hearing was held, the ALJ had recommended layoff as to 60 percent of a full-time position, and the board had reduced him to 40 percent of a full-time position. Clearly, Duax was not entitled to a full-time position under those circumstances.

Duax's alternative argument, that the governing board's failure to reassign staff members to allow Duax to teach French courses, likewise must fail.

Section 87743 states in the last paragraph: "The board shall make assignments and reassignments in such a manner that employees shall be retained to render any service which their seniority and qualifications entitle them to render."

What Duax proposes is the reassignment of a senior employee, employee A, to a position held by a junior employee, employee B, to open up a position for Duax. Clearly Duax could "bump" employee B and just as clearly cannot "bump" employee A. Duax's proposal is known as "inverse bumping." Duax cites no authority to support his argument that he has any inverse bumping rights. We conclude that section 87743 does not contemplate "inverse bumping rights." Such "rights" would allow a junior employee to affect the employment of senior employees, "bumping" them out of

their classroom positions and compelling their transfers to other classrooms or other types of assignments. Respondent's obligation to make assignments and reassignments as provided in section 87743 is limited to attempting to place an employee who would otherwise be terminated in a position being held by another employee with less seniority. (See *Teacher Layoffs in California: An Update, supra,* 30 Hastings L.J. 1727, 1749.)

## C.   *Martha Kieke-Eastridge*

■   The issue regarding appellant Kieke-Eastridge is simply one of credentialing. Is there substantial evidence that Kieke-Eastridge was not credentialed to teach any course that was being continued? Kieke-Eastridge had previously taught in the areas of fashion merchandising and fashion merchandising coordination, both of which were discontinued. The fashion merchandising program involved a number of courses ranging from introduction to fashion merchandising to grooming and personal grooming for the business world. It was designed to prepare students for a career in fashion merchandising in department stores and other types of businesses. She possessed a personal service credential that authorized her to teach in those areas.

Dr. Hernandez testified at the layoff hearing that no services requiring the use of a personal services credential would be offered by any of the colleges in respondent's district for the ensuing school year. Upon being asked by counsel for respondent at the hearing on the petition for writ of mandate what credentials she then had, appellant testified she had only the personal services credential.

Although Kieke-Eastridge emphasized at the layoff hearing and at the hearing on the petition for writ of mandate that various courses, including interior design, cosmetology, marketing, and general retailing, were being continued the following school year, she testified that she did not have a credential in cosmetology and barbering, decorative arts and related technologies, or marketing and distribution. Each of the areas being taught the following year required a specific credential which Kieke-Eastridge did not possess. Section 87743 is quite specific that in order for the senior employee to be retained that senior employee must be credentialed and competent to perform a service that is being rendered by a junior employee. Kieke-Eastridge's only credential was not in any area being continued. Indeed, the governing board would have been in violation of title 5, California Administrative Code, section 52000 and Education Code section 87274 as then constituted if it had allowed Kieke-Eastridge to teach a class for which she did not possess the appropriate credential.

We conclude that there was substantial evidence to support the trial court's resolution of each of the issues raised by appellants. The trial court did not err in denying appellants' petition for a writ of mandate.

We affirm the judgment; respondent is awarded its costs on appeal against appellants.

Best, J., and Ivey, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.