[No. C058222. Third Dist. Dec. 23, 2008.]

VERNON LANE BLEDSOE et al., Plaintiffs and Appellants, v.
BIGGS UNIFIED SCHOOL DISTRICT, Defendant and Respondent.

COUNSEL

Langenkamp and Curtis and Lesley Beth Curtis for Plaintiffs and Appellants.

Kronick Moskovitz Tiedemann & Girard, Christian M. Keiner; and Emily E. LaMoe for Defendant and Respondent.

OPINION

CANTIL-SAKAUYE, J.—Plaintiffs Vernon Lane Bledsoe and the Biggs Unified Teachers Association appeal the denial of their petition for writ of administrative mandamus. (Code Civ. Proc., § 1094.5.) Their petition alleged the Biggs Unified School District (District) abused its discretion by laying off Bledsoe, a tenured teacher with the District, in violation of the requirements of section 44955 of the Education Code (hereafter section 44955). We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In March 2007, the Board of Trustees of the District (Board) adopted a resolution decreasing the number of certificated employees of the District at

the end of the 2006/2007 school year due to budgetary shortfalls. The resolution directed the District superintendent to take the proper steps to notify the employees whose positions could be affected by this action. The Board adopted another resolution providing criteria to break any tie in seniority between employees affected by the cutbacks in particular kinds of service.

Bledsoe, a certificated employee who had worked for the District nine years teaching English and social science to seventh and eighth grade students, was given timely notice that his services would not be required for the 2007/2008 school year because of the reduction or elimination of particular kinds of services authorized by the Board's resolution. Bledsoe requested a hearing to determine if there was cause for not reemploying him for the 2007/2008 school year. The District timely served an accusation, notice of hearing, and notice of defense form on Bledsoe, who timely filed his notice of defense with the District. An administrative law judge (ALJ) heard the matter in April 2007.

At the administrative hearing, the interim superintendent for the District, Rick Light, testified he used a seniority list of certificated employees and a bumping chart to determine the proper employees to lay off.[1] Both the seniority list and the bumping chart were admitted into evidence without objection.[2] Although Bledsoe was senior on the seniority list to Scott Gates and Vince Sormano, two teachers for the District's community day school, the District gave Bledsoe a layoff notice and skipped Gates and Sormano.[3] Light testified he looked to a previous administrative law decision from 2004 that determined Gates and Sormano were properly retained by the District to teach community day school in a prior reduction in force and he concluded they should be exempt again because there was no break in their service.[4]

---

[1] For purposes of a school district reduction in force, "bumping" refers to a senior teacher moving into the position of a junior teacher. (§ 44955, subd. (b); *Alexander v. Board of Trustees* (1983) 139 Cal.App.3d 567, 571 [188 Cal.Rptr. 705] (*Alexander*).)

[2] The admission of the seniority list was subject to a stipulation changing the status of several teachers not involved in this appeal.

[3] For purposes of a school district reduction in force, "skipping" refers to a junior teacher being retained for specified reasons. (§ 44955, subds. (b), (d); *Alexander, supra*, 139 Cal.App.3d at p. 571.)

[4] The District's counsel asked the ALJ to take judicial notice of and admit into evidence the administrative decision. Although such decision involved other senior teachers besides Bledsoe, it involved consideration of the District's specific need for its community day school and the special training and experience of Gates and Sormano to meet those needs in the context of the exception provided by section 44955, subdivision (d). The decision concluded the District had met its burden to prove such exception when it retained Gates and Sormano and gave layoff notices to more senior teachers in the prior reduction in force. Plaintiffs' counsel objected, arguing the decision was irrelevant, that it was hearsay, that it was more prejudicial than probative under Evidence Code section 352 and that Bledsoe had the right to

Since the time of the prior decision, Gates had continued to teach fourth through eighth grades and Sormano had continued to teach ninth through 12th grades at the community day school. The community day school is reserved for students who were expelled or who had behavior problems that prevented them from being in a regular classroom.

Light testified he had experience in assigning teachers to community day school. The types of factors he looks at in making such an assignment include the teachers' background in psychology/sociology, their background in behavior modification, and their temperament for firmly handling difficult youth without getting angry. He testified community day school teachers teach all of the academic subjects to their students and so should be credentialed in as many subjects as possible and highly qualified, for purposes of the federal No Child Left Behind law, in more than one subject.

Light had observed both Gates and Sormano in their community day school classrooms. The students in Gates's class were on task, respected Gates's decisions or directives, and were handled in a calm and very direct manner. His observations of Sormano's class were similar. Sormano was very firm and commanded the respect of the students. He had helped a number of the students beyond the regular school situation. Light testified he was not aware of any of the teachers noticed for layoff that were more senior to Gates or Sormano who had at least one semester of teaching an alternative education class in the last five years.

Light admitted that before making the decision not to give a layoff notice to Gates or Sormano he did not ask Bledsoe whether he had taken courses in sociology or psychology, whether he had experience teaching community day school, or whether he had experience working with angry youth. Light did personally review Bledsoe's personnel file to see the number of subject credentials he had in order to consider moving him into a different area. He did not, however, look at the letters of recommendation attached to Bledsoe's resumé, one of which referenced Bledsoe's prior experience working at a juvenile hall and community day school. Light did not ask Bledsoe if he would consent to teach at the community day school prior to making his determination. Bledsoe testified he was willing to teach at the community day school and felt very qualified to do so.

The seniority list reflects Bledsoe has a single history credential, as well as introductory supplemental credentials in social science and English. He has

---

have Gates and Sormano testify at the hearing even though plaintiffs were not calling them as witnesses. The ALJ overruled plaintiffs' objections and admitted the decision.

an SDAIE (Specially Designed Academic Instruction in English) certificate. He is highly qualified for purposes of No Child Left Behind in English and social science. In his testimony, Bledsoe confirmed his credentials and certificate. He also testified he took approximately 15 units of sociology and psychology as part of his college teaching credential program. Bledsoe testified that during 1994/1995 he taught at a juvenile hall in the mornings and, for about a semester, at a community day school in the afternoons. In those situations, he worked with at-risk students and felt he did well with them. He also worked two summers during college at a boys' camp for troubled youth.

Bledsoe admitted he has had no coursework in psychology or sociology since college and that the last time he worked in a community day school was in 1995. Bledsoe admitted he has not received any training in crisis intervention within the last five years and, other than in-service programs, he has no training in drug abuse recognition. Bledsoe admitted that in the last five years he has not taught in a self-contained classroom, which he described as a classroom where the students are taught all subjects by a teacher with a multiple-subject credential. Bledsoe testified that community day school is analogous to a self-contained classroom.

The seniority list reflects Gates has a clear multiple-subject credential and is also highly qualified, for purposes of No Child Left Behind, in multiple subjects. The seniority list reflects Sormano has a clear single social science credential and is also highly qualified, for purposes of No Child Left Behind, in that same subject. Light testified Sormano has sufficient courses to cover most of the areas of high school instruction, that he had in fact broadened those, and that he has a number of units in sociology.[5]

In addition, the prior administrative law decision relied upon by Light indicates Gates had 10 years of experience teaching as of 2004, eight of which involved working with disabled populations. Gates has a bachelor's degree in applied psychology. He has extensive training in mediation, aggression management, abuse recognition, and other areas of training related to working with difficult student populations. The administrative law decision indicates Sormano also has extensive background and training in specialized areas related to teaching at a community day school. Specifically, he has extensive training in management of assaultive behavior and drug abuse recognition. He has experience working with special needs children and utilizing behavioral modification techniques.

---

[5] Plaintiffs' counsel objected to this portion of Light's testimony on the grounds of lack of foundation and vagueness, but did not object based on hearsay. The ALJ overruled the objections made.

For purposes of seniority, Bledsoe was tied with a teacher named Vera Withrow. Both started paid service for the District on August 26, 1998. Light testified that he did not apply the District's tie-breaking criteria to Bledsoe and Withrow at the time he decided to give the layoff notice to Bledsoe. However, he went through the criteria at the administrative hearing and testified that Withrow had seniority under the criteria because she had a clear multiple-subject credential, which is more versatile at the elementary school level where the District anticipated needing to move teachers.

The ALJ issued a proposed decision upholding the layoff notice to Bledsoe. The ALJ made factual findings, in pertinent part, that a community day school teacher requires specialized training and experience, that Gates and Sormano possess the necessary special training and experience, that the District has a special need to retain their services, and that Bledsoe lacks the special training and experience necessary to teach at the community day school. The ALJ found the District failed to apply the tie-breaking criteria for Bledsoe and Withrow until the administrative hearing, but when Light applied the criteria at the hearing it was established that Withrow was senior to Bledsoe. The ALJ found there was no persuasive evidence the tie-breaking criteria were applied inappropriately.

In his decision, the ALJ stated a number of legal conclusions, including that no junior certificated employee was scheduled to be retained to perform services a more senior employee was certificated and competent to render. The ALJ concluded that the District had met its burden under section 44955, subdivision (d), to allow it to deviate from terminating certificated employees in strict order of seniority so as to retain Gates and Sormano. And the ALJ concluded the District's application of the tie-breaking criteria was appropriate.

The Board adopted the proposed decision of the ALJ and Bledsoe was sent a final layoff notice. Bledsoe and the Biggs Unified Teachers Association filed a petition for administrative mandamus challenging the layoff. The trial court denied the petition. The trial court declined to issue a statement of decision because the "request for statement of decision was not properly presented in that it failed to specify those controverted issues as to which the statement of decision was requested." The judgment in favor of the District states "[a] Statement of Decision was not timely requested and [was] therefor [sic] denied by the court."

Bledsoe and the Biggs Unified Teachers Association timely appealed from the trial court's judgment.

## DISCUSSION

### I.

### Standard of Review

As tenured teachers possess vested rights in being retained, the trial court was required here to apply the independent judgment test in reviewing the factual determinations of the District (through its adoption of the ALJ's proposed decision)[6] in terminating Bledsoe. (*Alexander, supra,* 139 Cal.App.3d at p. 572.)

Since the trial court was required to exercise its independent judgment on the evidence, we in turn review the findings of the trial court to determine whether they are supported by substantial evidence on the whole record. If they are, the trial court's judgment must be upheld on appeal. (*Gallup v. Board of Trustees* (1996) 41 Cal.App.4th 1571, 1581–1582 [49 Cal.Rptr.2d 289]; *Duax v. Kern Community College Dist.* (1987) 196 Cal.App.3d 555, 562 [241 Cal.Rptr. 860]; 2 Cal. Administrative Mandamus (Cont.Ed.Bar 3d ed. 2008) Appeal From Superior Court Judgment, § 16.53, p. 641.) As the trial court did not issue a statement of decision setting out its findings, "all intendments favor the ruling below; and we must infer every finding of fact supporting the judgment so long as it is warranted by the evidence. [Citations.]" (*Veguez v. Governing Bd. of the Long Beach Unified School Dist.* (2005) 127 Cal.App.4th 406, 421 [25 Cal.Rptr.3d 526].) To the extent the relevant "facts are undisputed, and [plaintiffs] claim[] the [District] exceeded its jurisdiction and failed to proceed in a manner required by law, our standard of review is de novo. [Citation.]" (*California Teachers Assn. v. Butte Community College Dist.* (1996) 48 Cal.App.4th 1293, 1299 [56 Cal.Rptr.2d 269].)

### II.

### The Retention of Gates and Sormano

Section 44955, the " 'economic layoff[]' " statute (*Cousins v. Weaverville Elementary School Dist.* (1994) 24 Cal.App.4th 1846, 1849 [30 Cal.Rptr.2d 310]), provides in subdivision (b), in pertinent part, as follows:

---

[6] In their statement of facts, plaintiffs note they never received a signed order of adoption or resolution showing the Board adopted the ALJ's proposed decision. They only received unadopted minutes from a May 9, 2007, Board meeting showing its adoption. Plaintiffs do not set forth any legal argument based on these facts. In the absence of any argument, citation of authorities, and supporting references to the record, we will not address the matter further. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [79 Cal.Rptr.2d 273]; *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [21 Cal.Rptr.2d 834].)

"Except as otherwise provided by statute, the services of no permanent employee may be terminated under the provisions of this section while . . . any other employee with less seniority, is retained to render a service which said permanent employee is certificated and competent to render." Essentially this language provides " 'bumping' " rights for senior certificated and competent employees, and " 'skipping' " authority for a district to retain "junior employees who are certificated and competent to render services which more senior employees are not. [Citations.]" (*Alexander, supra*, 139 Cal.App.3d at p. 571.) Subdivision (d)(1) of section 44955, as relevant here, then provides an exception to subdivision (b) where a district demonstrates specific need for personnel to teach a specific course of study, that a junior certificated employee has special training and experience necessary to teach that course, and that the senior certificated employee does not possess such necessary special training and experience.

Plaintiffs contend Bledsoe is certificated and competent to render services to the District as a teacher in the community day school under both Education Code section 44865 (section 44865), and the criteria for competence set by the District in its economic layoff resolution. Plaintiffs contend the District did not establish the elements necessary for the exception provided in subdivision (d)(1) of section 44955. Plaintiffs complain the District did not even try to determine whether Bledsoe had the special training and experience it claimed was necessary to teach in the community day school. Therefore, they argue Bledsoe was entitled to bump Gates or Sormano and the District violated section 44955, subdivision (b), in skipping over Gates and Sormano. We conclude there was no violation of section 44955.

We start by examining Bledsoe's certification and competence to teach community day school.

Section 44865 provides: "A valid teaching credential issued by the State Board or the Commission on Teacher Credentialing, based on a bachelor's degree, student teaching, and special fitness to perform, shall be deemed qualifying for assignment as a teacher in the following assignments, provided that the assignment of a teacher to a position for which qualifications are prescribed by this section shall be made only with the consent of the teacher: [¶] . . . [¶] (j) District community day schools."

The economic layoff resolution of the District provides: "[T]he Governing Board has determined that with respect to this resolution, competency shall mean, at a minimum, possession of a preliminary, clear, professional clear, lifetime, or other full credential, or at least one semester actual teaching experience in alternative education within the last five years."

Plaintiffs contend Bledsoe's valid teaching credential based on a bachelor's degree qualifies him to teach community day school under the terms of section 44865. Plaintiffs contend he is also qualified under the District's resolution because the qualifications are stated in the alternative by the use of the word "or" and he has a full credential. The District contends Bledsoe is not qualified under the statute because he did not request to teach at the community day school before March 15, 2006 (the date of the first reduction in force notice), or consent to such an assignment. The District contends Bledsoe is not qualified under the resolution because it is undisputed he did not have one semester actual teaching experience in alternative education within the last five years. We agree with plaintiffs that Bledsoe is qualified to teach at a community day school so as to trigger section 44955, subdivision (b). We explain.

■ Section 44865 states that "[a] valid teaching credential issued by the State Board or the Commission on Teacher Credentialing, based on a bachelor's degree, student teaching, and special fitness to perform, shall be deemed qualifying for assignment as a teacher . . ." in a community day school. The statute then continues with the language: "provided that the assignment of a teacher to a position for which qualifications are prescribed by this section shall be made only with the consent of the teacher." These statutory phrases have been construed together as providing for an expansion of the pool of teachers who are eligible for assignment to the schools specified in the statute, provided that a teacher may only be assigned to teach beyond the scope of his/her credentials under the authority of this section with his/her consent. (*California Teachers' Assn. v. Governing Board* (1983) 141 Cal.App.3d 606, 610–611 [190 Cal.Rptr. 453].)

■ We agree with *California Teachers' Assn. v. Governing Board, supra,* 141 Cal.App.3d 606, that section 44865 provides an additional category of credentialed teachers who are authorized to teach at and can be assigned to the schools specified in the statute, including a community day school. Section 44865 broadens the list of qualified teachers from which a district can choose to fill a position at a community day school. Bledsoe falls within such pool of qualified teachers available for assignment under the terms of the statute, if he consents to such assignment.[7] We reject the District's claim that it was Bledsoe's obligation to anticipate his inclusion in the District's economic layoff and to offer his consent to such an assignment in order to establish his qualification for it. No; it was the District's obligation under section 44955, subdivision (b), to determine whether any permanent employee whose

---

[7] The evidence establishes that Bledsoe would have consented if he had been asked, but he was not asked.

employment is to be terminated in an economic layoff possessed the seniority and qualifications which would entitle him/her to be assigned to another position. (See *Krausen v. Solano County Junior College Dist.* (1974) 42 Cal.App.3d 394, 402 [116 Cal.Rptr. 833] [considering a predecessor statute to § 44955]; see also § 44955, subd. (c) ["governing board shall make assignments and reassignments in such a manner that employees shall be retained to render any service which their seniority and qualifications entitle them to render"].) Given this obligation, it was the District's duty to inquire whether Bledsoe would consent to an assignment to the community day school. In the absence of evidence that the District asked Bledsoe whether he would consent to teach at the community day school and that Bledsoe refused his consent, we conclude Bledsoe was qualified, that is, certificated and competent to render service (§ 44955, subd. (b)) at the community day school under section 44865.

We likewise reject the District's claim that Bledsoe was nevertheless not competent to teach in the community day school because he lacked a semester of actual teaching experience in alternative education within the last five years as required by the District's economic layoff resolution. The District's use of the word "or" in the economic layoff resolution indicates the District's adoption of two alternate definitions of competency for purposes of the resolution. In its brief the District simply ignores the alternative language and the disjunctive "or." We give the word "or" its ordinary meaning and conclude Bledsoe met one of the two definitions of competency under the Board's resolution.

We conclude Bledsoe is certificated and competent to teach community day school for purposes of section 44955, subdivision (b). Such conclusion does not, however, end our inquiry.

Subdivision (d) of section 44955, added to the statute in 1983 (Stats. 1983, ch. 498, § 65, p. 2094, eff. July 28, 1983), provides: "Notwithstanding subdivision (b), a school district may deviate from terminating a certificated employee in order of seniority" when "(1) [t]he district demonstrates a specific need for personnel to teach a specific course or course of study, or to provide services authorized by a services credential with a specialization in either pupil personnel services or health for a school nurse, and that the certificated employee has special training and experience necessary to teach that course or course of study or to provide those services, which others with more seniority do not possess."

■ Citing authority predating the addition of subdivision (d) to section 44955 (*Alexander, supra,* 139 Cal.App.3d 567, 573; *Moreland Teachers Assn. v. Kurze* (1980) 109 Cal.App.3d 648, 655 [167 Cal.Rptr. 343]; *King v. Berkeley Unified School Dist.* (1979) 89 Cal.App.3d 1016, 1021–1022 [152 Cal.Rptr. 782]), plaintiffs first assert that only formal, written District program requirements are relevant and "the District's needs as stated by Superintendent Light would be irrelevant" to show Bledsoe is competent to serve in the community day school. Plaintiffs' argument confuses competency under subdivision (b) of section 44955 with the exception now provided in subdivision (d)(1) of that section. Subdivision (d)(1) of section 44955 expressly allows a district to demonstrate its specific "needs" and there is nothing in the statute that requires such needs to be evidenced by formal, written policies, course or job descriptions, or program requirements.

Plaintiffs claim "the District failed to present evidence showing a need for specific teachers to teach in its community day school." We disagree. While teachers qualified under section 44865 may have the base qualifications necessary to be certificated and competent to render services at a community day school for purposes of section 44955, subdivision (b), subdivision (d)(1) recognizes a district may have special needs for personnel to teach a specific course of study that go beyond base qualifications.[8] Light testified community day school serves a distinct and difficult student population—those who have been expelled or who have extreme behavioral difficulties. To deal appropriately with such students, teachers need specialized background, training and experience. This evidence sufficiently established a specific need by the District for such teachers.

■ In order to retain a certificated employee under section 44955, subdivision (d)(1), however, a district must not only establish a specific need for personnel to teach a specific course of study, but establish the certificated employee it proposes to retain "has special training and experience necessary to teach that course or course of study or to provide those services." (§ 44955, subd. (d)(1).) Plaintiffs complain the District failed to present admissible evidence meeting this burden. Not so.

Light, who had experience in assigning teachers to community day school, testified to the factors he considers for assignment of teachers to community day school. Those factors include the teacher's background in psychology or sociology, background in behavior modification, and specific kind of temperament. While he testified community day school teachers teach all of the

---

[8] In fact, as a stated exception to subdivision (b), subdivision (d) of section 44955 presumes all of the teachers being considered are certificated and competent.

academic subjects to their students and so should be credentialed in as many subjects as possible and highly qualified, for purposes of the federal No Child Left Behind law, in more than one subject, he did not testify it was mandatory for the teacher to have multiple credentials and No Child Left Behind qualifications. Light decided to retain Gates and Sormano after reviewing the prior administrative law decision, which outlined their qualifications to teach community day school, as they had continued to serve as the District's community day school teachers.[9] Thus, he heavily weighted their actual continuous service and experience in the District's community day school.

The seniority list of the District was admitted into evidence without objection. It showed the credentials and No Child Left Behind compliance of both Gates and Sormano. Gates has a multiple-subject credential and is also highly qualified, for purposes of No Child Left Behind, in multiple subjects. The seniority list reflects Sormano has a clear single social science credential and is also highly qualified for purposes of No Child Left Behind in that same subject. Light testified without any hearsay objection that while Sormano holds a single-subject credential and No Child Left Behind qualification, Sormano has sufficient courses to cover most of the areas of high school instruction, that he had in fact broadened those, and that he has a number of units in sociology. Light testified without objection that Gates and Sormano had been teaching the District's two community day school classes (grades four through eight and grades nine through 12) since at least 2004, the time of the prior ALJ decision, without a break in their service. Light had personally observed both Gates and Sormano in their community day school classrooms and found them to be demonstrating the necessary temperament. The students were on task and respectful of both Gates and Sormano.

In addition, the prior administrative law decision relied upon by Light, indicates Gates had 10 years of experience teaching as of 2004, eight of which involved working with disabled populations. Gates has a bachelor's degree in applied psychology. He has extensive training in mediation, aggression management, abuse recognition, and other areas of training related to working with difficult student populations. The administrative law decision indicates Sormano also has extensive background and training in specialized areas related to teaching at a community day school. Specifically, he has extensive training in management of assaultive behavior and drug abuse

---

[9] Contrary to plaintiffs' characterization of Light's testimony, Light did not state that he "automatically retained" Gates and Sormano because of the prior administrative law decision. He testified that "[w]e . . . looked at the proceeding [*sic*] administrative law judge decision that they would be exempt at that particular point, and it was recent [*sic*] that they would be exempt again since there was no break in their service."

recognition. He has experience working with special needs children and utilizing behavioral modification techniques.

Plaintiffs reassert their objection to consideration of the administrative law decision. Plaintiffs claim the decision "cannot be evidence in 2007 of the qualifications of Mr. Gates and Mr. Sormano" because the decision "is evidence only of what the [ALJ] in that case found at that time as to the teachers involved in that case." Plaintiffs note they "objected that taking judicial notice was prejudicial pursuant to California Evidence Code section 352" and "[u]nder California Evidence Code section 454 and 459, this Court is not bound to take official notice of the prior decision if it finds the prior decision more prejudicial than probative."

The prior administrative law decision involved a prior reduction in force by the District where it sought to retain Gates and Sormano as its community day school teachers and to lay off more senior teachers. The decision concluded the District had met its burden to establish the exception provided by subdivision (d) of section 44955. Although such decision involved other senior teachers besides Bledsoe, it involved consideration of the District's specific need for its community day school and the special training and experience of Gates and Sormano to meet those needs in the context of the same legal issue presented here. Light testified he reviewed the decision when considering the current layoffs and concluded Gates and Sormano should be exempt again because there was no break in their service. Thus, the content of the prior decision was relevant to the District's current layoff decision.[10]

Admission of the prior decision into evidence was permissible. The hearing before the ALJ was conducted in accordance with the Administrative Procedure Act (APA) (see Gov. Code, § 11370). (Gov. Code, § 11500 et seq.; Ed. Code, § 44949, subd. (c).) The APA provides, in part, that: "The hearing need not be conducted according to technical rules relating to evidence and witnesses, except as hereinafter provided. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions." (Gov. Code, § 11513 (hereafter section 11513), subd. (c).) The prior 2004 administrative decision is "the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs." (*Ibid.*)

---

[10] Of course, plaintiffs were free to challenge the accuracy of the factual matters reflected in the decision or show that there were changes since 2004 to the District's need and/or to the qualifications of Gates and Sormano. They did not do so.

Section 11513, subdivision (f), gives the ALJ discretion "to exclude evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time." (Cf. Evid. Code, § 352.) There is nothing in this record to indicate the admission of the prior administrative decision involved any undue consumption of time.

Section 11513, subdivision (d), provides that "[h]earsay evidence may be used for the purpose of supplementing or explaining other evidence but over timely objection shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions." Since plaintiffs timely objected on the basis of hearsay to the prior administrative decision, it cannot be the sole support for a finding of Gates's and Sormano's special training and experience for teaching community day school. However, it can be and was properly used to supplement the other evidence of their qualifications.[11]

Considered together, the evidence shows Gates has a bachelor's degree in applied psychology, is credentialed in multiple subjects, is highly qualified in multiple subjects, had 10 years of experience teaching as of 2004, eight of which involved working with disabled populations, has extensive training in mediation, aggression management, abuse recognition, and other areas of training related to working with difficult student populations, and has been teaching in a self-contained classroom covering grades four through eight at

---

[11] In their petition for rehearing plaintiffs assert we have failed to note all of their objections and have read other of their hearsay objections too narrowly. We disagree. Contrary to their claim, plaintiffs did not make a general hearsay objection to all of the District's evidence of the qualifications of Gates and Sormano at any point in these proceedings. Plaintiffs objected specifically to use of the prior administrative decision and to Light's testimony regarding the qualifications of Gates, but never objected to admission and consideration of the seniority list or Light's testimony regarding Sormano. Moreover, even if we were broadly to construe plaintiffs' objections to Light's testimony regarding Gates to encompass an objection to his testimony regarding Sormano, it would not preclude such evidence being considered, along with the prior administrative decision, for the purpose of supplementing the other evidence on this point. (§ 11513, subd. (d).)

Plaintiffs argue against this conclusion, contending objection is not necessary to preclude the use of hearsay to support a finding. Plaintiffs primarily rely on *McNary v. Department of Motor Vehicles* (1996) 45 Cal.App.4th 688, 696 [53 Cal.Rptr.2d 55] (*McNary*), and 9 Witkin, California Procedure (5th ed. 2008) Administrative Proceedings, section 111, page 1238. With respect to its comments on hearsay evidence, *McNary* has been superseded by the amendment of section 11513 and is no longer good law. (*Dibble v. Gourley* (2002) 103 Cal.App.4th 496, 503 [126 Cal.Rptr.2d 709], overruled on another ground in *MacDonald v. Gutierrez* (2004) 32 Cal.4th 150, 158–159 [8 Cal.Rptr.3d 48, 81 P.3d 975].) Witkin continues to cite *McNary* for the proposition that "[a]n objection to *improper evidence* introduced in an administrative proceeding need not be raised to preserve the issue for judicial review." (9 Witkin, *supra*, § 111, p. 1238, italics added.) If the only basis for objection to evidence is hearsay, it is no longer *improper evidence* under section 11513, subdivision (d).

Government Code section 68081 does not require us to grant rehearing to allow the parties to brief these points as these issues were fairly included by the issues raised by the parties' briefs. (*People v. Alice* (2007) 41 Cal.4th 668, 677 [61 Cal.Rptr.3d 648, 161 P.3d 163].)

the District's community day school at least since 2004. He has demonstrated the required temperament to successfully teach in the community day school environment.

Although the evidence shows Sormano has only a clear single social science credential and is highly qualified only in that same subject, he has sufficient courses to cover most of the areas of high school instruction, he has a number of units in sociology and he has extensive training in management of assaultive behavior and drug abuse recognition. He has experience working with special needs children and utilizing behavioral modification techniques. He has been teaching in a self-contained classroom covering grades nine through 12 at the District's community day school at least since 2004. He also has the required temperament to successfully teach in the community day school environment.

The evidence supports the finding that Gates and Sormano have the "special training and experience necessary to teach" at the District's community day school. (§ 44955, subd. (d)(1).) The District could retain Gates and Sormano if "others with more seniority do not possess [such special training and experience]." (*Ibid.*)

Bledsoe has multiple credentials, is highly qualified, for purposes of No Child Left Behind, in multiple subjects, took 15 units of psychology and sociology in college, has taught for a year in the mornings at a juvenile hall, has taught for a semester in the afternoons at a community day school, and has worked for two summers during college at a county boys' camp. However, Bledsoe has not had any coursework in psychology or sociology since college, has not received any training in crisis intervention within the last five years and, other than in-service programs, has no training in drug abuse recognition. The last time he worked in a community day school was in 1995. He has no recent experience within the last five years teaching in a self-contained classroom, which would be analogous to a community day school classroom. This evidence supports the finding that Bledsoe does not possess the special training and experience that Gates and Sormano possess.

Plaintiffs contend, however, it was illegal for the Board to give notice to Bledsoe and not Gates and Sormano without first assessing his competence to teach at the District's community day school. Plaintiffs cite as support *Davis v. Gray* (1938) 29 Cal.App.2d 403 [84 P.2d 534] (*Davis*). *Davis* is distinguishable.

In *Davis, supra*, 29 Cal.App.2d 403, a tenured teacher was discharged without the school board attempting to determine whether she was competent to perform the duties rendered by probationary teachers who were employed

in the school. (*Id.* at pp. 405–406.) The reviewing court held the action of the school board was illegal and void, and that the teacher was entitled to be reinstated. As relevant here, the court stated: "To arbitrarily deprive a teacher who has acquired permanent tenure, of her position, in conflict with the statute, *without pretending to determine her competency to remain, and without notice and a hearing*, is contrary to the spirit of the Teachers' Tenure Act and void. A teacher who has acquired permanent tenure has a vested right to her position in the absence of some disqualification as provided by the act, and she may not be deprived of that right *except by due process of law*. [Citation.]" (*Id.* at p. 407, italics added.)

In contrast here, the Board adopted the ALJ's proposed decision and discharged Bledsoe only after he had received proper notice of his proposed layoff and a full administrative law hearing to determine his competency to remain as a teacher at the District's community day school instead of Gates or Sormano. Bledsoe received due process. Of course, we agree the District should have assessed Bledsoe's qualifications prior to giving him the first layoff notice. However, while such failure is an error, it was not prejudicial in this case as Bledsoe requested a hearing, the District timely served an accusation, notice of hearing, and notice of defense form on Bledsoe, who timely filed a notice of defense, and a full hearing on the merits followed. The ALJ issued a detailed proposed decision, which was considered by the Board and adopted. Only then was a final layoff notice sent to Bledsoe. That is, Bledsoe's discharge occurred after the Board considered his competency to remain.

■ We conclude the trial court did not err in concluding the District properly retained Gates and Sormano even though Bledsoe had seniority over them.

## III.

### The Retention of Withrow

Section 44955, subdivision (b), includes the following provision regarding termination of employees with equal seniority: "As between employees who first rendered paid service to the district on the same date, the governing board shall determine the order of termination solely on the basis of needs of the district and the students thereof. Upon the request of any employee whose order of termination is so determined, the governing board shall furnish in writing no later than five days prior to the commencement of the hearing held in accordance with Section 44949, a statement of the specific criteria used in determining the order of termination and the application of the criteria in ranking each employee relative to the other employees in the group. This

requirement that the governing board provide, on request, a written statement of reasons for determining the order of termination shall not be interpreted to give affected employees any legal right or interest that would not exist without such a requirement."

Bledsoe and Withrow first rendered paid service to the District on the same date. Pursuant to the quoted portion of section 44955, subdivision (b), the Board was required to determine the order of termination between Bledsoe and Withrow, and any other teachers tied in seniority, based on the needs of the District and its students. For such purpose, the Board had adopted a resolution providing specific tie-breaking criteria. Bledsoe, not Withrow, was selected for layoff. Bledsoe did not request the District provide him with a written statement of how the tie-breaking criteria had been applied to decide between Bledsoe and Withrow.[12] At the administrative hearing, Light testified that he did not apply the District's tie-breaking criteria to Bledsoe and Withrow at the time he decided to give the layoff notice to Bledsoe. However, he went through the criteria at the administrative hearing and testified that Withrow had seniority under the criteria because she had a clear multiple-subject credential, which is more versatile at the elementary school level where the District anticipated needing to move teachers.

Plaintiffs claim the District failed to proceed in the manner required by law when it failed to apply its own tie-breaking criteria before the time it decided to give Bledsoe, and not Withrow, a notice of termination, applying the criteria only at the hearing to justify what the District had already done. We conclude the error in failing to apply the tie-breaking criteria before giving Bledsoe the layoff notice was not prejudicial as Light applied the criteria at the hearing, Bledsoe had the opportunity to challenge Light's application of the criteria at the hearing, there is no evidence the criteria were applied inappropriately or in bad faith, and the Board reviewed and adopted Light's application of the criteria as set forth in the ALJ's proposed decision when it adopted the decision and decided to discharge Bledsoe. (Ed. Code, § 44949, subd. (c)(3); *California Teachers Assn. v. Butte Community College Dist.*, *supra*, 48 Cal.App.4th at pp. 1305–1306, relying on *Greer v. Board of Education* (1975) 47 Cal.App.3d 98, 117 [121 Cal.Rptr. 542].)

---

[12] Although plaintiffs contended at the administrative hearing that Bledsoe had requested the written application of the tie-breaking criteria through his counsel's discovery request, the ALJ found no evidence of such request. While plaintiffs on appeal have cited us to their contention at the hearing regarding Bledsoe's request, they have not cited us to any portion of the record containing the referenced discovery request. We have no basis, therefore, to disagree with the ALJ that there is no evidence Bledsoe requested the written statement.

## DISPOSITION

The judgment is affirmed.

Blease, Acting P. J., and Raye, J., concurred.

A petition for a rehearing was denied January 12, 2009, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied April 15, 2009, S170571. Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.