Filed 5/16/13  Sears v. Water Employees Services Auth. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| JOEL SEARS, | |
| Plaintiff and Appellant, | E055113 |
| v. | (Super.Ct.No. RIC10011133) |
| WATER EMPLOYEES SERVICES AUTHORITY, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Sharon J. Waters, Judge.
Affirmed.

Law Offices of Alexandria C. Phillips and Alexandria C. Phillips for Plaintiff and
Appellant.

Best Best & Krieger and Cynthia M. Germano for Defendant and Respondent.

I

INTRODUCTION

Joel Sears was terminated from his employment by the Water Employee Services

1

Authority (WESA) in July 2009 for not notifying his supervisors when he was late or absent for work and for submitting false time records. Sears appeals from an order and judgment denying his petition for writ of administrative mandate seeking to reverse the termination and reinstate his employment.

The standard of review requires us to uphold the trial court's judgment if any substantial evidence supports the trial court's statement of decision. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 824; *Bledsoe v. Biggs Unified School Dist.* (2008) 170 Cal.App.4th 127, 134.) We have thoroughly viewed the record and determined that substantial evidence supports the judgment, which we affirm.

II

STATEMENT OF FACTUAL AND PROCEDURAL BACKGROUND

We derive the material facts from the administrative record.[1]

A. *The Facts Related to May 25, 2009*

WESA employees are subject to a Memorandum of Understanding (MOU) and the WESA Administrative Code (WESA Code). An employee must arrive at work promptly. If an employee is late, he must give notice within 15 minutes of his starting time by contacting a supervisor. The failure to do so is considered an "unauthorized absence." If an employee has an unauthorized absence or "continuing tardiness," he is subject to disciplinary action or dismissal.

---

[1] We grant Sears's motion to augment. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

Employees operate on the honor system and are expected to record their time accurately. The time reported by an employee includes regular time, overtime, and standby hours, the latter being time spent on-call. If an employee reports his time falsely, he is subject to being discharged for dishonesty.

Sears was employed for 16 years by WESA as a wastewater treatment supervisor for the Elsinore Valley Municipal Water District. When he was terminated, he was an acting supervisor III at the regional plant. Sears worked from 7:00 a.m. to 4:30 p.m. on a 9/80 schedule, Sunday through Thursday, with alternate Thursdays off. He supervised three employees. Sears's duties included assigning work to his subordinate employees, inspecting the plant, and coordinating maintenance and contractors.

Sears's immediate supervisor was Mitch Pierson, the chief plant operator. In ascending order, the other supervisors were Ted Eich, John Vega, and Ronald Young. WESA's policy was that Sears was required to notify Pierson, his immediate supervisor, if he was late. If he could not reach Pierson, he had to contact one of the other supervisors. Notifying a subordinate employee about being late was not considered sufficient notice of being late because a supervisor needed to be at the plant at all times.

Sears lived about one mile from the work site. On Memorial Day, May 25, 2009, he called a subordinate employee to say he would be late. He did not call any of his supervisors to notify them he would be late. He worked from 11:30 a.m. to 4:30 p.m. Later the same day, he had to return to the regional plant to respond to an alarm, which he noted in the log book and for which he was entitled to receive a minimum credit of two and one half hours. In addition to responding to the alarm when off duty, he had also

3

worked for several hours as part of an interview panel on his day off the preceding Thursday. Sears did not report that he was late on May 25 and he claimed he had worked nine hours. Because it was the Memorial Day holiday, he was also paid an additional nine hours at the rate of time and one half.

According to Sears, it had been a longstanding practice to allow WESA employees to exchange overtime hours for time off work. On some occasions, when he had worked long hours, he was offered compensatory time off. Sears exercised discretion in how he recorded his time according to his convenience.

Sears admitted that he was "burnt out" and he may have exercised "liberty" in reporting his time. He was either late by a few minutes 70 percent of the time or on time 70 percent of the time.[2] He remembered only two Sundays in which he did not come in at all.

According to WESA, there is no policy, written or informal, allowing an employee, at his discretion, to trade unrecorded overtime or standby hours as a substitute for regular hours an employee chooses not to work. In fact, Sears had reported and been paid for many hours of overtime and standby work in 2008 and 2009.

Sears had been disciplined in 2005 for engaging in personal activity–painting car parts–outside the scope of employment during work hours. In 2006, he was demoted from supervisor to operator III for disobedience, insubordination, dishonesty, and altering

---

[2] The parties disagree about whether he was late or on time 70 percent of the time.

or falsifying OSHA documents. He claimed he had been punished for telling the truth in the OSHA investigation. Sears was eventually promoted back to supervisor.

B. *The Administrative Proceedings*

On June 8, 2009, Eich and Vega met with Sears and Sears admitted he had arrived at work late on May 25, 2009, although he had not notified his supervisors and he had reported nine hours of work. Sears also admitted he commonly came to work on Sundays one to three hours late—and on several Sundays he did not come to work at all—but he still reported having worked nine hours.

Vega determined that Sears had been falsifying his time cards in violation of WESA policies. Vega issued a notice of proposed termination, which was upheld by Young, the general manager. Sears appealed.

In January 2010, a grievance hearing was conducted before a hearing officer. Pierson and Eich testified that Sears had violated the MOU and the WESA Code by not notifying a supervisor when he was late or absent and by submitting falsified time cards. In opposition, Sears presented testimony by other WESA employees to support his contention that WESA had a longstanding policy of discouraging employees from using overtime and, instead, insisted that employees use their accrued overtime to take time off work. Pierson and Eich denied the existence of any such policy or practice. Sears attacked the testimony of Eich and Pierson as false and untrustworthy.

In April 2010, the hearing officer submitted a 40-page findings of fact and recommended decision in favor of termination. The WESA board of Directors voted unanimously to adopt the recommendation for termination.

*C. Sears's Petition for Writ of Administrative Mandamus*

Sears filed his second amended petition in December 2010. After briefing by the parties and a hearing, the court issued its ruling denying the petition: ". . . [Sears] argued that it was a common practice for employees of [WESA] to 'bank' overtime hours, and that he was merely using his bank of overtime hours when he recorded time on his time card for hours that he was not actually at work. [Sears] claimed that his supervisors not only knew that employees banked overtime, but that there was an unwritten policy which encouraged and/or mandated that employees not record overtime on their time sheets, but instead trade the overtime hours for time off. Sears argued that [WESA's] employees . . . all agreed that they had been asked to take time off in lieu of overtime.

"Even if the Court accepted [Sears's] claim that employees were permitted or sometimes asked to take time off work in lieu of overtime, there was no support in the record for [Sears's] claim that an employee could keep a 'mental bank' of overtime hours that he worked and then use those 'banked' hours to take time off work at his discretion without any prior notification to his supervisor. [W]itnesses . . . consistently testified that on the occasions when employees were allowed to take time off for any reason, they were required to first notify their supervisors."

The court found that Sears had admitted violating the MOU and the WESA Code by not reporting for work on time on May 25, 2009—or not coming to work at all on other occasions—without giving notice to his supervisors and by claiming that he had worked a nine-hour day. Therefore, WESA acted within its discretion in terminating Sears's employment.

6

## III

## DISCUSSION

The superior court conducts an independent review of the findings of the administrative agency. (*Guymon v. Board of Accountancy* (1976) 55 Cal.App.3d 1010, 1016.) In applying the substantial evidence standard of review, the appellate court does not reweigh the evidence or question the reliability of witness testimony or substitute our deductions for those of the superior court. (*Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968; *Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 52.) Instead, this court resolves all conflicts and indulges all reasonable inferences in favor of the prevailing party in the superior court. (*Barber v. Long Beach Civil Service Com.* (1996) 45 Cal.App.4th 652, 659-660.) The appellate court will not disturb the discipline imposed unless there is a manifest abuse of discretion. (*Kazensky,* at p. 54.)

In view of these principles, we are not assisted by Sears's appellate brief which devotes 33 pages to copying verbatim the testimony of witnesses favorable to his position and an additional four pages to copying the testimony of Sears's supervisors, Pierson and Eich, whom Sears accuses of being untrustworthy and committing perjury and fraud without offering any factual support for these assertions. Sears has the burden to show error in the judgment which is presumed to be correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) He has failed to meet that burden here because his conclusory argument—lacking in pertinent authority, and analysis—is presented only in the last two pages of his brief.

7

As WESA clearly articulates, Sears was fired—not because he used overtime to substitute for time actually worked—but because he came to work late on May 25, 2009, and also came late to work regularly on other Sundays, or not at all, without notifying his supervisors, and then reported having worked a full nine hours. Even if he may have been allowed to substitute time, he admitted to violating WESA's MOU and WESA's Code by acting without proper notice to his supervisors and submitting false reports of his time.

Substantial evidence shows that Sears did not keep a written record of his "mental bank" of overtime. Instead, he acted according to his own convenience without seeking permission from WESA. Sears admitted that other employees would ask for a supervisor's approval to trade overtime for time off but Sears claimed he had "carte blanche" to act however he wanted. Several other employees[3] admitted to using overtime "sporadically" for time off but always with a supervisor's permission. None of them agreed that time cards could be falsified.

In summary, substantial evidence supported the trial court's findings that Sears had been late or absent without telling his supervisors and had submitted false time records claiming to have worked nine hours. No evidence supported Sears's contention that he could bank overtime hours to use at his convenience without notice to WESA and still claim a full day's work.

---

[3] Cornell Gillenwater, Dennis Hayes, and John Cauzza.

As a supervisor, Sears was responsible for complying with the WESA MOU and WESA Code. Unless reasonable minds could differ, termination was the proper remedy for his conduct (*Kazensky v. City of Merced, supra,* 65 Cal.App.4th at p. 53.) Where it is established a public employee has behaved dishonestly, there is also a reasonable basis for termination. (*Deegan v. City of Mountain View* (1999) 72 Cal.App.4th 37, 50.)

IV

DISPOSITION

Substantial evidence supports the findings of the trial court and the penalty of termination was reasonable. We affirm the judgment.

In the interests of justice, we order the parties to bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

McKINSTER
Acting P. J.

KING
J.

9